493 So.2d 795 (1986)
Sallie ANDERTON, Plaintiff-Appellant,
v.
Sherwood AKIN, Defendant-Appellee.
No. 17929-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Rehearing Denied September 18, 1986.
Sherburne Sentell, Minden, for plaintiff-appellant.
Fish, Montgomery & Robinson by John W. Montgomery, Minden, for defendant-appellee.
Before HALL, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Sallie Anderton, appeals the trial court judgment in favor of defendants, Sherwood Akin, Florence Ownby, Ronald and Christina Brandt, dismissing the plaintiff's suit to obtain a right of passage from her enclosed estate to the nearest public road over land owned by the defendants. We affirm the trial court's judgment.
The plaintiff's property consists of approximately eighty acres located in the Southwest Quarter (SW ¼) of the Southwest Quarter (SW ¼) of Section 16; and the Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) of Section 17; all in Township 18 North, Range 9 West, Webster Parish, Louisiana. As alleged in the plaintiff's petition, her land is completely enclosed without suitable access to a public road. The plaintiff is seeking access to Louisiana Highway 164 which is located south of her property. Lying between the plaintiff's property and Highway 164 is *796 Gordon Heights Subdivision; the owner of most of the lots in the subdivision being the defendant, Sherwood Akin. Also abutting the plaintiff's property to the south and adjacent to Gordon Heights Subdivision on its western side, is a tract of land owned by individuals not made parties to this suit, the Howell Estate heirs.
In her original petition filed September 25, 1984, the plaintiff sought to obtain a right of passage over vacant lots 10 and 11 located in Gordon Heights subdivision. The plaintiff alleged that this passage was necessary in order to enable her to market the timber growing on her land. At the time the suit was filed, plaintiff had already sold $30,000 worth of timber and had not yet been able to provide her buyer with an access route through which to remove the timber. A 250 foot passage, 50 feet wide over the two vacant lots (referred to throughout this suit as Proposition 1) would enable the plaintiff to use an existing subdivision street, Sherwood Lane, in order to gain access to Louisiana Highway 164. Approximately two months after this suit was filed, Sherwood Akin sold these lots to Mr. Brandt and Mrs. Ownby. The plaintiff then filed an amended and supplemental petition adding these parties as defendants. In this amended petition, the plaintiff also alleged that she intended to develop her land into a residential subdivision at some future date.
Sherwood Akin answered the plaintiff's petition alleging that a right of passage over these two vacant lots would render them useless for residential purposes and that Sherwood Lane would not be suitable for commercial traffic. The defendant asserted that a more suitable right of passage could be located at the western side of Gordon Heights Subdivision. This passage, if granted, would be 815 feet long and would run between the subdivision and the Howell Estate. (This location is referred to as Proposition 3 throughout this suit.) The defendant also asserted that such a passage would provide a more direct access to Highway 164 without burdening the existing subdivision streets.
At trial, both plaintiff and defendants presented expert witnesses who testified concerning the benefits and disadvantages of the several proposed locations for the right of passage from the plaintiff's land to Louisiana Highway 164. Another location, Proposition 2, also running through this subdivision, was eliminated from consideration by the court at the conclusion of the trial. The "Williams proposition," running through the estate of a landowner to the east of the subdivision, was never seriously considered as an appropriate passage by either side.
After considering all of the evidence and testimony presented at trial, the court concluded in its written reasons for decision, that Proposition 3 would provide the necessary access for the plaintiff at a lower overall cost than Proposition 1, considering the cost of the land, inconvenience to the parties involved, and other factors. The court, however, did not grant the plaintiff this right of passage as all the persons owning land covered by this proposed passage were not joined in the suit. The court thus rendered judgment in favor of the named defendants, dismissing the plaintiff's suit at her costs.
The plaintiff has appealed alleging that the trial court made numerous errors in not granting a right of passage over the 250 foot route through the defendant's subdivision known as Proposition 1. Defendants, on the other hand, argue that the evidence presented at trial supported the trial court's decision that Proposition 3 was the most appropriate location as compared to the other proposed routes. We agree with the trial court's decision and affirm the judgment.
LSA-C.C. Articles 689 through 692 provide the statutory basis upon which a determination of the issue at bar must rest.
Article 689. Enclosed estate; right of passage
The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to *797 indemnify his neighbor for the damage he may occasion.
Article 690. Extent of passage
The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate.
Article 691. Constructions
The owner of the enclosed estate may construct on the right of way the type of road or railroad reasonably necessary for the excercise of the servitude.
Article 692. Location of passage
The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands.
As noted in Rieger v. Norwood, 401 So.2d 1272 (La.App. 1st Cir.1981), writ denied 409 So.2d 618 (La.1981):
The term "generally" in Article 692 has been held to be an acknowledgement that there are exceptions to the general rule expressed therein, and it is recognized that the nature and location of the servitude are governed by the circumstances of the case. Rockholt v. Keaty, 256 La. 629, 237 So.2d 663 (1970); Morgan v. Culpepper, 324 So.2d 598 (La. App. 2d Cir.1975); Finn v. Eoff, 368 So.d 199 (La.App. 1st Cir.1979).
LSA-C.C. Arts. 699 and 700, along with the remainder of the codal sections dealing with servitudes, were amended by La. Acts 1977, Number 514, sec. 1 (effective January 1, 1978). The substance of these articles is presently contained in the aforementioned LSA-C.C. Arts. 689 and 692, as amended respectively. However, it is noted that as the 1977 amendments did not change the law applicable to this case, the jurisprudence enunciated under these articles prior to their amendments dealing with this subject matter is of note as well.
In Wells v. Anglade, 23 So.2d 469 (La. App. 1st Cir.1945), the First Circuit Court of Appeal noted:
In the case of Littlejohn v. Cox, 15 La.Ann. 67, in which the court, although referring to the present Article 700 of the Civil Code and to some of the French commentaries discussion of that Article in which it is particularly stated that it was not the convenience of the one demanding the right of way that had to be considered but rather it should be fixed at that point the least injurious to him who had to grant it, nevertheless said: "In determining the place where the right of way shall be exercised, the matter is not left entirely at the caprice or option of the party compelled to grant the servitude. At the same time that due regard will be paid to his interests, and even to his convenience in the premises, the court will keep in view the rights which the law intends to secure to the opposite party. The road awarded must be such a one as will be serviceable, one, of which he may derive the contemplated advantage of a force (sic) expropriation. The defendants cannot exact that an extremely circuitous, impracticable and expensive route should be taken by the plaintiff, because it may happen to be less burdensome to the former." That case has been cited with approval in several comparatively recent cases, notably Bandelin v. Clark, 7 La.App. 64, Mercer v. Daws, La.App., 186 So. 877, and Morris v. Nesbitt, La.App., 9 So.2d 75.
Furthermore, in Estopinal v. Storck's Estate, 44 So.2d 704 (La.App.Orl.1950), that court stated:
While Article 700 enjoins that the servitude shall be fixed in the place least injurious to the owner of the servient estate, the Supreme Court, in Littlejohn v. Cox, 15 La.Ann. 67, departed from the strict letter of the article and said that due regard will be paid to his interests, and even to his convenience in the premises.
Mrs. Matt complains that the right of way granted by the court is extremely inconvenient and damaging to her. Uncontradicted testimony shows that the *798 right-of-way as fixed will necessitate the moving of her barn, garage, and chicken house, and the destruction of fruit, pecan, and other trees.
. . . . .
Whether another route across her land would occasion less damage cannot be ascertained from the evidence, but, seemingly, if her property is to be subjected to the servitude, out of the frontage of 191 feet, a more practical way, even if a little more circuitous, could be selected which would not entail the moving of buildings and the destruction of valuable trees.
The rule that the way must be generally taken on the side nearest the road should only be departed from for weighty considerations, but the most direct course may be deviated from with a view to rendering the servitude less onerous to the land over which the road is to be laid out. Miller v. Thompson, 3 La. Ann. 567.
In the instant case, the evidence was uncontradicted in revealing that Proposition 1 was the shortest route from the plaintiff's enclosed estate to the nearest public road, the subdivision street, Sherwood Lane. The plaintiff presented the testimony of Mr. Bill Zachary, a consulting forester, who was the plaintiff's representative in selling her timber to International Paper. He testified that he did not feel that Proposition 3 would be suitable as an access road to the plaintiff's property. He indicated that there would be problems with water accumulating in this area due to its alleged lower elevation. He noted, however, he did not run elevation tests to determine the exact difference in the ground level. Mr. Zachary also indicated that it would be economically infeasible to attempt to build a road in this area due to the length of the road necessary and the presence of a canal and gravel pits which have been excavated on this land west of the subdivision. He noted, however, on cross examination, that he was only on the plaintiff's property approximately once a year. He also stated that an access road for logging operations would cost considerably less than a black topped road for subdivision purposes.
The plaintiff also presented the testimony of Mr. Jack Tharpe, a home builder whose construction company on previous occasions had built logging roads for International Paper. Mr. Tharpe emphasized that he did not build asphalt roads, but only gravel roads to be used in logging operations. He stated that he estimated it would cost approximately $2,600 to extend Sherwood Lane Road to the plaintiff's property. He indicated, however, that it would cost more if utility lines had to be relocated. He also stated he could not estimate the cost of constructing a road over Proposition 3, as he only built the roads according to the specifications given to him. He indicated that he wasn't qualified to formulate what the specifications should be.
Plaintiff finally presented the testimony of Mr. Arthur DeLoach, a real estate broker and appraiser. Mr. DeLoach indicated that he is an associate member of the Society of Real Estate Appraisers, but that he had never qualified as an expert witness in the field of appraising before. Although he had not examined the entire 80 acres, Mr. DeLoach indicated the best use of the plaintiff's property immediately north of Gordon Heights Subdivision would probably be residential development. However, he stated that some areas probably could not be developed due to the presence of low lying areas in this tract and the accompanying problems of sewage disposal. He testified that these problems were apparent in the Gordon Heights Subdivision as well. Mr. DeLoach was also questioned by the court concerning these problems.
Mr. Herman Bonsall testified for the defendant and indicated that as a service man for Louisiana Power and Light Company, he was familiar with the property in Gordon Heights Subdivision. He noted that there were power lines behind lots 10 and 11. If Proposition 1 was accepted, extending Sherwood Lane to the plaintiff's property, he indicated that at least one pole would have to be moved and the power *799 lines would probably have to be raised. However, he stated that he could not estimate the cost of these procedures.
The defendants then presented the testimony of Mrs. Ownby, one of the defendants in this suit, who stated that she was aware of this lawsuit when lots 10 and 11 were purchased. She stated, however, that she had been interested in purchasing lot 11 since 1975 and that both lots were purchased for a total of $5,500. She revealed that she had refused access across her land, even though she had been offered half of the purchase price of the lot.
Mr. Wayne Williamson, a licensed civil engineer and land surveyor, also testified for the defendants. He was accepted by the court as an expert in civil engineering. Mr. Williamson testified he was qualified to give estimates as to the cost and requirements of street construction and had performed these services for the city of Minden on a consulting basis.
Mr. Williamson stated that he made soil borings on lots 11 and 21 and made three borings on Sherwood Lane in the Gordon Heights Subdivision. He related that Sherwood Lane was presently showing some deterioration not only in the surface of the asphalt but also in the base and sub-base due to irregularities in the road. He indicated that this street would not be able to sustain the type of loads usually associated with the logging business.
Mr. Williamson testified that with respect to the various propositions suggested for a right of passage, that Proposition 1 would be the least expensive strictly from a construction cost standpoint. There would be less clearing and filling required at this location as it covers the shortest distance and was the highest elevation. He indicated that Proposition 3 would only entail a minimal amount of clearing and filling, but that the surface material would be more expensive than that involved with Proposition 1, due to the longer length of passage. He noted, however, that Proposition 3 would take less preparation to construct than each of the other alternatives and "would interfere less than the normal everyday operation of traffic and people down there" in the subdivision, especially if this access was used primarily for logging operations.
Mr. Williamson concluded that Proposition 3 would provide a reasonable right-of-way to the plaintiff's property. He also stated that if the property were to be eventually developed into a subdivision, Proposition 3 would be the more appropriate location as "it has more of a foundation on which you could expect to reasonably expect a permanent surface on than either of the remaining choices."
Mr. Robin Beck, a real estate appraiser with a M.A.I. designation affirming that he is fully versed in all fields of real estate, testified for the defense and was accepted by the court as an expert in this field. His testimony concerned the impact upon the landowners that these proposed right-of-ways may impose. He revealed that Proposition 1, over the land belonging to the defendants, would diminish the property value to the extent that the land would no longer be fit for residential construction, thereby reducing the utility and marketability of the land. A right of passage taken through these lots would reduce the size of the lots, thereby reducing their respective values. He noted that the land over which Proposition 3 would run, would not lose its utility to this same degree, as there is already a twenty foot easement in that area. He further indicated that Proposition 3 would not interfere with the use of the land on the Howell Estate.
Mr. Akin, one of the defendants, also testified and indicated that there is some fill material already located in the area of Proposition 3 which could be used to aid in the construction of the right of passage there. He further indicated that a passage over this area would not interfere with the water supply from the gravel pits which he uses to irrigate his orchard and nursery.
The trial court, as noted above, concluded that Proposition 3, although not the shortest route, was the most appropriate for access to a public road from the land belonging to the plaintiff. He noted that *800 the primary use of the plaintiff's land would be for the growing of timber. We agree with the court's conclusion in this respect, noting that the court considered the potential of this area for residential development and correctly concluded that on the basis of the testimony of the witnesses presented at trial, that residential development was not close at hand. The court noted further the testimony of each of the witnesses on the issues of the present and future use of the plaintiff's property, the construction of roads within and outside of the subdivision, and the impact of these constructions upon the landowners in the area. The court stated that the qualifications and expertise of Mr. Williamson in the field of civil engineering made his testimony the most helpful in balancing the needs of the plaintiff against the inconvenience and expense to defendants.
The court was correct in balancing these considerations as such a determination is mandated by the jurisprudence and statutory authority cited above. The trial court, in this case, was aware that the transportation of timber was inevitable over any type of access route that would be provided to the plaintiff, regardless of whether her land was eventually developed into a residential subdivision. The trial court had to weigh the necessity of such an access for the plaintiff, in order that she could fully utilize her land, with the probability that the deterioration to existing streets would be intensified if logging operations were conducted through the subdivision. The court, with due regard to the rights of each of the parties, considered each of the requirements enunciated in LSA-C.C. Arts. 689-692, and concluded that the alternative offered by Proposition 3 would best serve the interests of everyone involved. We cannot say the trial court was clearly wrong in its conclusion. We cannot substitute our evaluations and inferences for those of a reasonable trier of fact. Harris v. Darinn Corporation, 431 So.2d 441 (La.App. 1st Cir.1983), writ denied 435 So.2d 429 (La.1983); Esta v. Dover Corporation, 385 So.2d 439 (La.App. 1st Cir.1980), writ denied 392 So.2d 690 (La. 1980).
Furthermore, the trial court was correct in not granting an actual right of passage over the land covered by Proposition 3, as the adjoining landowners were not made defendants to this suit. The plaintiff's rights with regard to passage over the property of other abutting landowners is not properly before the court and must await adjudication in a suit to which these other landowners are made parties. Rockholt v. Keaty, 256 La. 629, 237 So.2d 663 (La.1970).
Accordingly, for the foregoing reasons, the trial court's judgment is affirmed at plaintiff's costs.
AFFIRMED.