573 So.2d 1294 (1991)
Arlene Powledge MITCHAM, et al., Plaintiffs-Appellees,
v.
Theda P. BIRDSONG, et al., Defendant-Appellant.
William Carroll MITCHAM, et al., Plaintiffs-Appellees,
v.
Theda P. BIRDSONG, et al., Defendant-Appellant.
Nos. 22,009-CA, 22,010-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
David F. Post, Farmerville, for plaintiffs-appellees.
*1295 Iverson & Amman by B.G. Iverson, Monroe, for defendant-appellant, Theda P. Birdsong.
Before MARVIN, C.J., FRED W. JONES, Jr., J., and PRICE, J. Pro Tem.
MARVIN, Chief Judge.
In consolidated actions to gain the CC Art. 689 right of passage for enclosed contiguous estates to a public road over land owned in indivision by two defendants, one defendant appeals a judgment granting the servitude, contending the trial court was clearly wrong in concluding that several proposed shorter access routes to a public road were not "feasible" and arguing that no "extraordinary circumstances" exist to make inapplicable the general rule of Art. 692 that the "passage shall be taken along the shortest route ... to the public road."
The trial court initially acknowledged that the proper passage must be determined separately for each of the enclosed estates respectively owned by two plaintiffs, notwithstanding that each plaintiff verbally agreed to allow the other passage across his respective estate. We reverse and remand with directions to allow the trial court to make the separate determination on specific findings in each case.[1]

FACTS
This sketch, not to scale, shows the two enclosed estates (APM estate and WCM estate), the public roads in the area, the land of defendants (labeled Pettigrew) and of the non-party neighbors (Barron and Elkins), and the four access routes the trial court considered:
*1296 
The APM, WCM and Pettigrew estates are used as timberland. Elkins' tract is fenced and terraced and is used as a pasture. The improvements on Barron's land, and the trial court's findings as to the four routes, will be discussed below. The record shows these approximate distances:
1,875 ft. from WCM estate to Cole Rd. via Route 3,
3,200 ft. from APM estate to Cole Rd. via Route 3, extended through WCM estate, and
3,465 ft. from APM and WCM estates to Mt. Union Church Road via Route 1.

LAW
These actions are governed by CC Arts. 689 and 692:

*1297 Art. 689. Enclosed estate; right of passage
The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.
Art. 692. Location of passage
The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands.
These articles, enacted in 1977, were derived from prior Arts. 699 and 700, without substantial change. The former Art. 700, which corresponds to the present Art. 692, was summarized in Vermilion Parish School Board v. Broussard, 263 La. 1104, 270 So.2d 523, 525 (1972):
[The] Article ... clearly provides that the owner of the landlocked estate cannot choose from which of his neighbors' estates he will exact a right of passage, but that it "shall be" where the distance is the shortest from the enclosed land to the public road. The mandatory language of that article is modified by the term "generally" as an acknowledgment of certain exceptions, which ... have no application to the case we consider.
See also Roberson v. Reese, 376 So.2d 1287 (La.App. 2d Cir.1979), quoting with approval Yiannopoulos, Enclosed Estates; Louisiana and Comparative Law, 23 Loy.L.Rev. 343, 367 (1977):
... the courts first locate the right of way on the estate that offers the shortest route to the public road and then consider the least injurious place within that estate.
Exceptions to the general rule that the servient estate is the one offering the shortest route to a public road were recognized in Morgan v. Culpepper, 324 So.2d 598 (La.App. 2d Cir.1975), writ denied, and Anderton v. Akin, 493 So.2d 795 (La.App. 2d Cir.1986), writ denied. In Morgan, the passage was granted over the defendants' estate because a shorter route, over property owned by another, was impassable during part of the year due to flooding.
In Anderton, the plaintiff sought passage from her timberland to a state highway via two vacant lots and an existing street in a residential subdivision. Although this route over defendants' land was shorter than another across land owned by one who was not a party to the action, we affirmed the denial of passage over defendants' land, stating, "The trial court had to weigh the necessity of such an access for the plaintiff, in order that she could fully utilize her land, with the probability that the deterioration to existing streets would be intensified if logging operations were conducted through the subdivision." 493 So.2d at 800.

ROUTES CONSIDERED BY TRIAL COURT
Notwithstanding that these actions were consolidated, and that each plaintiff had informally given the other permission to cross his or her land, the trial court correctly recognized that it was required to "[separately] determine the proper location of the servitude of passage for each tract." See Roberson v. Reese, supra. The court nevertheless found that Route 1 was "the proper location [of] the servitude ... for both tracts." Our emphasis.
We edit and paragraph the trial court's findings as to the four routes shown on the sketch above:
The plaintiffs in the recent past used a logging road to the south (which is not marked on the map) to obtain access to their property. This road lay east of [Route] 3, and ran across Mr. Barron's land. Since that time, however, Mr. Barron's son has built a house on that road and has converted it into an improved driveway. The testimony is undisputed that it would no longer be feasible to use this driveway as a logging road to access the plaintiffs' property. Logging traffic would destroy the driveway, and this route is not seriously urged as an alternative route by the defendants.

*1298 Route 1 is the route sought by both plaintiffs. It proceeds from a point on the boundary between the plaintiffs' tracts and follows an existing logging road across the defendants' property out to the Mt. Union Church Road on the east.
Route 2 is an alternate route suggested by defendants. This route would follow the existing logging road over defendants' property for some distance, then rather than turning north would proceed directly east over the lands of Mr. Elkins, which lands consist of highly improved, terraced and fenced pasture.
The defendants propose that plaintiffs could build a stretch of road running from the Cole Road to join with an existing logging road on Mr. Barron's property to create Route 3 [west of and roughly parallel to Barron's driveway].
Route 4 is clearly the shortest distance between the plaintiffs' estates and a public road, but it is admitted by both parties that this route would be completely unfeasible as it is underwater during parts of the year and is impassable.
There is no route to the north to join with the Farmerville Road, as it is uncontested that the route is blocked by an impassable ravine.
While the evidence establishes that a road could be constructed on the location of proposed Route 3, such a location would be useless for all practical purposes, inasmuch as any road constructed there would not be suitable to the type of traffic associated with timber operations and would require considerable effort and constant maintenance [because] the first 100 yards or so would be comprised of very deep sand and would be extremely prone to washing, and the road would have to be redone each time heavy equipment was used on it.
As for proposed Route 2, across the lands of defendants and Mr. Elkins, defendants apparently raised this route primarily as an attempt to be difficult. Defendants reason that if they must allow anyone to cross their land, then the shortest distance across their land to the public road would involve cutting straight to the public road across the lands of Mr. Elkins. Plaintiffs do not wish to take this route inasmuch as Mr. Elkins has no existing logging roads on his land. Instead, Mr. Elkins' land consists of highly improved pasture land with ponds and terraces. This pasture is used for livestock. If plaintiffs were to be forced to cross over Mr. Elkins' land, this would involve cutting into his terraces and dividing his pasture practically in half. It would probably be necessary to fence such a road to keep the livestock off of it during use, thus for all practical purposes his tract would be completely separated.
The court feels constrained to point out that as defendants' own witness, Mr. Helmer, conceded, if the court found that Mr. Elkins' land owed a servitude of passage to the plaintiffs, the court would have to locate that passage along Mr. Elkins' fence line in order to cause the least possible damage to Mr. Elkins' pasture. In other words, if the court chose to send plaintiffs across Mr. Elkins' land, the route that the court would take would be almost identical to the proposed Route 1, except that it would lie on the Elkins' side of the boundary fence instead of on the defendants' side, thus there would be no savings in distance.
Route 1 is by far the most convenient and least injurious of these routes to the landowners, inasmuch as the road already exists, is suitable for logging traffic, and could be used with minimal physical damage to the property and little or no damages in the forms of trespass. In sum, the court having balanced the rights of the plaintiffs with the rights of the surrounding landowners, is of the conclusion that proposed Route 1 would best serve the interest of everyone concerned.
Appellant does not complain of the court's eliminating Route 4 as impassable. The record supports the court's conclusion. See Morgan v. Culpepper, supra. Appellant contends, however, that the court erred in granting the servitude over Route 1, the longest of the four routes. At this *1299 juncture, we find some merit in this argument.
The record does not show the distance from the plaintiffs' estates to Mt. Union Church Road via Route 2, which crosses the Pettigrew timberland and the Elkins pasture. The trial court found that a logging road on Elkins' land, whether along the straight-line path of Route 2 or along the meandering path parallel to Route 1, would damage the Elkins pasture. This finding is not clearly wrong. Anderton v. Akin, supra.
The court found that Route 3 "would be useless for all practical purposes, inasmuch as any road constructed there would not be suitable to the type of traffic associated with timber operations and would require considerable effort and constant maintenance [because] the first 100 yards or so would be ... very deep sand ... extremely prone to washing, and the road would have to be redone each time heavy equipment was used on it." (Our emphasis.)
Two of plaintiffs' witnesses, who had supervised or otherwise worked in one or more of the logging operations and hauling from plaintiffs' land over the road that is now Barron's driveway, testified that the deep sand from that road had washed into Cole Road after the prior logging operations; that the logging road was worked with dozers before and after the logging operations; and that such road work is a normal part of logging operations. While the presence of deep sand and the likelihood of washing may cause inconvenience with the use of Route 3, as it obviously did when the nearby road that is now Barron's driveway was then used, we cannot agree with the trial court's finding that this would render Route 3 "useless for all practical purposes, ... not suitable to the type of traffic associated with timber operations."
This inconvenience, in the face of evidence that it is a normal part of logging operations, does not, in our opinion, give rise to an exception to the general rule that the right of passage is to be located over the estate that offers the shortest route to a public road. The inconvenience expected here, in an area that has long been used for logging operations, is not factually analogous to the probability of damage to a residential street from logging operations that was shown in Anderton v. Akin, supra. The law contemplates injury to property from the Art. 689 servitude and not inconvenience to the property owner, as we shall attempt to explain.
The article 689 servitude is for the benefit of "an enclosed estate" and "shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate." Art. 690. The owner of the enclosed estate is responsible for constructing on the servient estate, at his expense and his obligation to indemnify his neighbor for the damage done by him, "the type of road or railroad reasonably necessary for the exercise of the servitude." Art. 691. Subject to the obligation to indemnify, the Civil Code contemplates that the enclosed estate may be "used" in more than one way and that the owner of that enclosed estate at any given time may construct on the right of way whatever type of road is reasonably necessary for the use of the enclosed estate.
The "right of way," for instance, that is created in 1990 that is reasonably necessary to allow the use of the enclosed estate by its owner as private hunting or recreational ground may not be the most suitable for the owner two decades later who uses the enclosed estate to mine coal or raise timber, but the right of way created in 1990 remains fixed, unless the owner of the servient estate demands relocation at his expense to another right of way that "affords [the owner of the dominant estate] the same facility ..." Art. 695. The one who owns the dominant or once-enclosed estate cannot demand relocation on the servient estate after the servitude is fixed. Ibid.
The Code emphasizes that the location of the right of way across the neighboring property generally will be the shortest route from the enclosed estate that is the least injurious to the intervening lands. Art. 689, 692. The Code mentions "convenience" *1300 [or inconvenience] of the owner of the servient estate only after the servitude is "fixed" and then to allow that servient estate owner to demand relocation at his expense. Art. 695.
Public road access for both the WCM and the APM estates is shorter via Route 3 than via Route 1. Absent evidence of something more than inconvenience associated with its use, Route 3 appears to be the legally proper location for the WCM estate and perhaps also for the APM estate, as we shall further discuss in the next section of this opinion.
Plaintiffs did not sue Barron for the right of passage across his land and did not create a predial servitude in favor of the APM estate across the WCM estate for access to the proposed Route 3. The actions below were against only the Pettigrew estate owners. A conclusion in these actions that Route 3 is the legally proper location for the servitude to serve one or both enclosed estates would have no effect on the owner of the Route 3 lands and would preclude only the servitude being located across the land of defendant-parties. Vermilion Parish School Board v. Broussard, supra; Anderton v. Akin, supra.

ROUTE NOT CONSIDERED BY TRIAL COURT
Perhaps through inadvertence, the trial court made no findings as to another proposed access route for the APM estate. This route, which we shall denominate as alternative Route 5 and which we have not shown on the above plat, would run due west from Mt. Union Church Road across defendants' land, as Route 1 does initially, and then would continue west along the section line that crosses defendants' land and forms the northern boundary of the APM estate. Alternative Route 5 measures about 2,200 feet and is about 1,265 feet shorter than Route 1, which runs west, then south, then west again over defendants' land to reach the APM estate near its southeast corner. Alternative Route 5 to the APM estate is also about 1,000 feet shorter than proposed Route 3.
Although there was evidence that a culvert would be needed in Route 5 to traverse a "draw" or natural drain, the trial court did not mention this evidence or otherwise discuss the route in its opinion. The trial court must consider the shorter straight-line distance from the APM estate to the Mt. Union Church Road, the first mandate of CC Art. 692. If that is the shortest route of public road access for the APM estate, the trial court may then consider locating the right of way so that it is least injurious to the servient estate, the second mandate of Art. 692. Roberson v. Reese, supra. We instruct the court, on remand, to make factual findings as to the alternative Route 5 access for the APM estate.

CONCLUSION
As the trial court has already acknowledged, it should separately determine the proper servient estate and servitude location for each of the two respective estates. On remand, the trial court shall consider evidence in this record and may allow or direct that indispensible and necessary parties be joined and present other evidence.
At this juncture, and assuming that proper parties are joined and the plaintiff-owners of the two enclosed estates formally grant a predial servitude so that the trial court may treat the two estates as one for the purposes of fixing the Art. 689 access, we must parenthetically make this hypothesis:
Separate determination may lead the trial court to select Route 3 as the shortest access route for the WCM estate and the alternative Route 5 as the shortest access route for the APM estate. The trial court may then select which of these two routes is the shorter and decree the estate on which that route lies to be the servient estate and place the right of way, least injuriously, across the servient estate and then across the one enclosed estate to the other enclosed estate. One enclosed estate then would become a servient estate to the other enclosed estate for Art. 689 purposes. Both enclosed *1301 estates would be served by the one Art. 689 servient estate.
If, as in the hypothesis, the owners of the enclosed estates have formally stipulated to create a conventional predial servitude of passage over one enclosed estate in favor of the other, the court shall so decree this and locate the servitude in its judgment.

DECREE
The judgment is reversed and the case is remanded for further proceedings as directed. Costs of this appeal are assessed to the plaintiffs.
REVERSED AND REMANDED.
NOTES
[1] Although only one of the defendants appealed, the effect of the judgment as to the co-owner who did not appeal is suspended until the judgment becomes final as to the appellant. See CC Art. 714.