STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 06-418


KEVIN MICHAEL MAY, ET AL.

VERSUS

THOMAS H. MILLER, ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-842
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED IN PART, REVERSED IN PART.**

Joseph R. Ballard
Attorney at Law
P. O. Box 2431
Baton Rouge, LA 70821
(225) 381-5799
Counsel for Defendant/Appellee:
Entergy Services, Inc.

Gary A. Bezet
Kean, Miller, Hawthorne, D'Armond, McCown, & Jarman
One American Place, 22nd Floor
Baton Rouge, LA 70821
(225) 387-0999
Counsel for Defendant/Appellee:
Colonial Pipeline Company

**Donald Coleman Brown**
**Woodley, Williams, Boudreau, Norman, Brown, & Deville, L.L.C.**
**P. O. Drawer 3731**
**Lake Charles, LA 70602-3731**
**(318) 433-6328**
**Counsel for Defendants/Appellees:**
**Owen John & Dolores K. Morrissey**

**Robert William Collings**
**Collings & Collings**
**3434 Common Street**
**Lake Charles, LA 70601**
**(337) 477-4725**
**Counsel for Defendant/Appellee:**
**Geneva Danine Courville**

**David Frank Dwight**
**Dwight Law Firm**
**1400 Ryan St.**
**Lake Charles, LA 70601**
**(337) 439-3138**
**Counsel for Defendant/Appellee:**
**Kenneth B. & Elizabeth K. Martin**

**A. J. Gray III**
**The Gray Law Firm**
**P. O. Box 1467**
**Lake Charles, LA 70602-1467**
**(337) 494-0694**
**Counsel for Defendant/Appellee:**
**Stream Family Ltd. Partnership**

**Carl H. Hanchey**
**Lundy & Davis, LLP**
**P. O. Box 3010**
**Lake Charles, LA 70602**
**(337) 439-0707**
**Counsel for Defendants/Appellees:**
**Wells Talbot Watson**
**Kerry Ribbeck**
**Edward A. Ribbeck**
**Nathan H. Bray, Jr.**
**Carol J. Bray**
**Christopher Baggett**
**Baggett Investors, LLC**

**Catherine Louise Stagg**
**Southwest Louisiana Legal Services Society**
**1011 Lakeshore Drive**
**Lake Charles, LA 70601**
**(337) 436-3308**
**Counsel for Defendant/Appellee:**
**Succession of Gibson Leboeuf**

**James L. Trinchard**
**Hoy Robert Hughes**
**Trinchard & Trinchard**
**858 Camp St.**
**New Orleans, LA 70130**
**(504) 523-1986**
**Counsel for Defendants/Appellees:**
**Bridgeline Gas Distribution, LLC**
**Concha Chemical Pipeline, LLC**
**Texaco Petroleum Pipeline, LLC**

**Kenneth Michael Wright**
**Attorney at Law**
**203 West Clarence St.**
**Lake Charles, LA 70601**
**(337) 439-6930**
**Counsel for Plaintiffs/Appellants:**
**Kevin Michael May**
**Patricia Kay May**

**John Ernest Brown**
**Attorney at Law**
**P. O. Box 1359**
**Lake Charles, LA 70602**
**(337) 433-2361**
**Counsel for Defendant/Appellee:**
**Intervivos Trust of Cassie A. Smith**

**David Bruce Jones**
**Attorney at Law**
**700 First Ave.**
**Sulphur, LA 70663**
**(337) 528-3314**
**Counsel for Defendant/Appellee:**
**Ivan Leboeuf Estate**

**William Mitchell Redd**
**Liles & Redd**
**P.O. Box 3717**
**Lake Charles, LA 70602-3717**
**(337) 433-8529**
**Counsel for Defendant/Appellee:**
**Thomas H. Miller**

**Thomas John Gayle**
**Attorney at Law**
**P. O. Box 1890**
**Lake Charles, LA 70602-1890**
**(337) 494-7171**
**Counsel for Defendant/Appellee:**
**Anthony Leonards**

**James Lawrence Bullen**
**Strain, Dennis, Mayhall, & Bate**
**P. O. Box 53319**
**Lafayette, LA 70505-3319**
**(337) 237-5900**
**Counsel for Defendants/Appellees:**
**Enterprise Lou-Tex NGL Pipeline L.P.**
**Enterprise Lou Tex Propylene Pipeline, L.P.**

**Penelope Quinn Richard**
**Attorney At Law**
**132 Smith Circle**
**Cameron, LA 70631**
**(337) 905-8135**
**Counsel for Defendant/Appellee:**
**John Edward Portie**

**Ike Amos Hobaugh**
**Wright & Moreno**
**203 W. Clarence St.**
**Lake Charles, LA 70601-9431**
**(337) 439-6930**
**Counsel for Plaintiffs/Appellants:**
**Patricia Kay May**
**Kevin Michael May**

**Mack A. Hollis**
**Attorney at Law**
**3112 Enterprise Blvd.**
**Lake Charles, LA 70601**
**(337) 474-6106**
**Counsel for Defendants/Appellees:**
**Ivan Leboeuf Estate**
**Robert Lynn Sonnier, II**
**Stream Family Ltd. Partnership**
**Enterprise Lou-Tex NGL Pipeline L.P**
**Geneva Danine Courville**
**Carol J. Bray**
**Edward A. Ribbeck**
**Thomas H. Miller**
**Intervivos Trust of Cassie A. Smith**
**Bridgeline Gas Distribution, LLC**
**Christopher Baggett**
**Baggett Investors, LLC**
**Kerry Ribbeck**
**Anthony Leonards**
**Nathan H. Bray, Jr.**
**Owen John & Dolores K. Morrissey**
**Succession of Gibson Leboeuf**
**Dwight Raymond Lemoine**
**Concha Chemical Pipeline, LLC**
**John M. Pelafigue**
**Colonial Pipeline Company**
**Kenneth Bryant Martin**
**Kenneth B. & Elizabeth Martin**
**Enterprise Lou Tex Propylene Pipeline, LP**
**John Edward Portie**
**Wells Talbot Watson**
**Texaco Petroleum Pipeline, LLC**
**Stephen James Flood**
**Entergy Services, Inc.**
**Scott Brandon Brame**

**Robert Lynn Sonnier, II**
**In Proper Person**
**5507 Big Lake Road**
**Lake Charles, LA 70605**

**Dwight Raymond Lemoine**
**In Proper Person**
**5024 Fernwood Drive**
**Lake Charles, LA 70605**

**John M. Pelafigue**
**In Proper Person**
**5286 Big Lake Road**
**Lake Charles, LA 70605**

**Kenneth Bryant Martin**
**In Proper Person**
**102 Windsor Drive**
**Lake Charles, LA 70605**

**Stephen James Flood**
**In Proper Person**
**5032 Fernwood**
**Lake Charles, LA 70605**

**Scott Brandon Brame**
**In Proper Person**
**3709 A. Miller Road**
**Lake Charles, LA 70605**
**(337) 474-5498**

**SAUNDERS, Judge.**

This litigation arises from a property owner petitioning the court for a right of passage to its enclosed estate. Motions for summary judgments were granted removing several defendant landowners from the suit based on a finding that their land would not be subject to the eventual choice of route the court would make.

After a two day trial and post trial memoranda were filed on the issues, the trial court ruled in favor of the plaintiffs by granting a twenty foot right of passage along a route it found least injurious to the servient estate. The trial court also awarded taking damages of twenty-five thousand dollars and severance damages of twenty-five thousand dollars to the servient estate landowner.

Plaintiffs appealed the judgment of the trial court. We affirm in part and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

On January 25, 2000, Kevin M. May and Patricia K. May purchased a 65.57 acre tract of land ("May property") from Amoco Production Company ("Amoco") for four hundred thousand dollars. The property is an enclosed estate as it has no access to a public road. The tract is located within the city limits in south Lake Charles, Louisiana and is contiguous with the Stream Family Limited Partnership ("Stream") residential and golf course development, "Graywood."

The southern portion of the May property consists of approximately twenty-seven acres of high land. The northern portion of the May property consists of approximately thirty-eight acres below sea-level that is generally called Kara Bay. Various pipelines span east and west between the May property and Stream's Graywood property. The Mays plan to build a house and a barn on their land and, in the future, to build homes for their children.

Prior to the Mays' purchase from Amoco, the May property was part of a larger, eighty-two acre tract. In 1995, Amoco sold a 16.5 acre tract situated north of Kara Bay that had access to Lisle Peter Road, a public road. This sale created an enclosed estate as the remaining tract had no access to a public road.

About one year after their purchase, on or about February 13, 2001, the Mays filed a Petition for a Right of Passage based upon Louisiana Civil Code Article 689 *et. seq.*, naming as defendants, landowners of intervening lands lying east of the May property towards Big Lake Road. The Mays originally sought a twenty foot right of passage from the south east corner of their property traversing from west to east, crossing several defendant landowners' properties, to the end of an existing Stream private road that connects to Big Lake Road. The Stream private road is used by defendant, Thomas Miller, in accordance with a terminable personal servitude.

On several different occasions the trial court considered various exceptions, motions, allegations, testimony and exhibits in court including a Peremptory Exception filed by Stream of No Right of Action and No Cause of Action.

Through the disposal of these various exceptions, etc., property owners to the north of the May property were dismissed even though the closest route to a public road was in the northern direction to Lisle Peters Road. Through summary judgment, the trial court dismissed these defendants because this route was not acceptable as a body of water, Kara Bay, was between the May property and Lisle Peters Road. The trial court then looked to the east or south to find the location of the right of passage to grant to the Mays.

The trial occurred on January 20th through 21st, 2005. Sixteen witnesses testified. After the trial, the trial court gave the parties time to submit post-trial

2

memoranda on findings of fact and law. After the parties extensively briefed the issues, the trial court took the matter under advisement.

Written reasons for judgment were given on December 27, 2005. The trial court decided that since the Graywood Traffic Circle or cul-de-sac was the closest public road to the May property that didn't require traversing Kara Bay, Stream must bear the entirety of the servitude. After it was determined that the Stream property was to be the servient estate, the trial court considered several routes and performed a balancing test to help determine the route least injurious to the servient estate.

The Mays proposed four routes to the south. Stream proposed that, if a right of passage was to be granted, then the least injurious route would be an east/west route along the northern border of its estate so as not to hinder its future plans for the development of the property.

The trial court granted the Mays a twenty foot right of passage that took an east/west route along the northern border of the Stream property to Big Lake Road. The trial court opined that the route was the least injurious to the servient estate. The trial court also found that the Mays owed Stream a total of fifty thousand dollars. The Trial court also found that the mays owed Stream a total of fifty thousand dollars, twenty-five thousand dollars for the right of passage property taken and twenty-five thousand dollars for severance damages.

The Mays appealed this judgment alleging that the trial court erred in three ways: (1) by selecting a route for the their right of passage that necessitated the building of a bridge, (2) by finding that Stream was entitled to twenty-five thousand dollars for right of passage property taken and twenty-five thousand dollars for

3

severance damages from the Mays, and (3) by granting the Mays a twenty foot wide right of passage rather than a thirty foot wide right of passage.

Stream raised the issue on appeal that their Peremptory Exception of No Right of Action and No Cause of Action should have been granted pursuant to Louisiana Civil Code Article 693 because Amoco had created the enclosed estate though its own accord and the Mays were its successors, and as such, their neighbor, Stream, were not bound to furnish a right of passage to them. The Appellee advised the court at oral arguments they had abandoned that argument. Accordingly, this court will not address this issue.

We affirm in part and reverse in part.

**ASSIGNMENTS OF ERROR:**

1.  Was the trial court manifestly erroneous or clearly wrong in granting the Mays a right of passage by selecting a route that necessitated the building of bridge?

2.  Was the trial court manifestly erroneous or clearly wrong in finding that Stream was entitled to fifty thousand dollars from the Mays for the right of passage property taken and severance damages?

3.  Was the trial court manifestly erroneous or clearly wrong in granting the Mays a twenty foot wide right of passage rather than a thirty foot wide right of passage?

**ASSIGNMENT OF ERROR #1:**

Plaintiff/Appellant contends that the trial court erred in granting the Mays a right of passage by selecting a route that necessitated the building of bridge. We disagree.

The standard of review for a finding of fact such as this is that of manifest error. A trial judge's findings of fact will not be disturbed unless he/she is manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury

4

or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

The applicable codal articles are as follows:

*Louisiana Civil Code Article 689*

The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.

*Louisiana Civil Code Article 690*

The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate.

*Louisiana Civil Code Article 692*

The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands.

*Louisiana Civil Code Article 693*

If an estate becomes enclosed as a result of a voluntary act or omission of its owner, the neighbors are not bound to furnish a passage to him or his successors.

*Louisiana Civil Code Article 694*

When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated of partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation or partition does not mention a servitude of passage.

*Louisiana Civil Code Article 695*

The owner of the enclosed estate has no right to the relocation of this servitude after it is fixed. The owner of the servient estate has the right to demand

relocation of the servitude to a more convenient place at his own expense, provided that it affords the same facility to the owner of the enclosed estate.

"The term "generally" in La.Civ.Code art. 692 is an acknowledgment that there are exceptions to the general rule, and it recognizes that the nature and location of the right of passage are governed by the circumstances of each case." *Pearson v. Theriot*, 534 So.2d 35, 36 (La. App. 3 Cir. 1988), citing *Anderton v. Akin*, 493 So.2d 795 (La. App. 2 Cir.), *writ denied*, 497 So.2d 1014 (La.1986).

The trial court in the instant matter looked to *Davis v. Culpepper*, 34,736, pp/ 7-9 (La.App. 2 Cir. 7/11/01), 794 So.2d 68, 73-74, *writ denied*, 01-2573 (La. 12/14/01), 804 So.2d 646 in discussing the application of these articles:

> [A]s noted by the supreme court in *Rockholt v. Keaty*, 256 La. 629, 237 So.2d 663 (1970), the owner of an enclosed estate does not have discretion to choose which estate should be burdened with a legal right of passage. A two-step analysis is required by article 692, former article 700. First to be determined is which estate owes the servitude of passage. *Vermilion Parish School Board v. Broussard*, 263 La. 1104, 270 So.2d 523 (1972); *Rockholt*, supra; *Robertson v. Reese*, 376 So.2d 1287 (La. App. 2d Cir. 1979), citing A.N. Yiannopoulas, *Enclosed Estates: Louisiana and Comparative Law*, 23 Loy. L.Rev. 343, 367 (1977). Only then should the courts engage in a balancing test to determine where on the servient estate the passage should be located. *Mitcham v. Birdsong*, 573 So.2d 1294 (La. App. 2d Cir. 1991); *Robertson*, *supra*; C. Sherburne Sentell, III, Comment, *Fixing the Right of Passage from an Enclosed Estate: Deciding Where to Break Out Using Louisiana Civil Code Article 692*, 54 La. L.Rev. 1659, 1670 (1994).

> The general rule of La. C.C. art. 692 is that the estate providing the shortest route to the nearest public road must provide the right of passage. *Robertson*, supra; *Mitcham*, supra; *Morgan v. Culpepper*, 324 So.2d 598 (La. App. 2d Cir. 1975), *writs denied*, 326 So.2d 377, 378 (La.1976). As recognized by the legislature in its use of the word "generally" in the article 692, there are situations that allow the servitude of passage to be imposed on an estate that does not provide the shortest route. *Rockhold*, supra; *Morgan*, supra; *Rieger v. Norwood*, 401 So.2d 1272 (La. App. 1st Cir. 1981). In the absence of exceptional circumstances, it is only the estate that provides the shortest access to the nearest public road that will be burdened with the servitude. *Vermilion Parish School Board*, supra; *Morgan*, supra.

6

The first exception recognized by the jurisprudence is when the estate which provides the shortest route is covered by water or is otherwise not accessable year-round. See *Morgan*, supra; *Mitcham*, supra; *Morris v. Nesbitt*, 9 So.2d 75 (La. App. 2d Cir. 1942); *Tessier v. Medical Center of Baton Rouge, Inc.*, 93-0075 (La. App. 1st Cir. 03/11/94), 636 So.2d 928; *Bouser v. Morgan*, 520 So.2d 937 (La. App. 3d Cir. 1987). The second derogation from the general rule is when the costs associated with crossing the estate which is the shortest distance from the public road are so exceptional that from a practical standpoint it is economically unfeasible to build. See *Mercer v. Daws*, 186 So. 877 (La. App. 2d Cir. 1939) *Pearson v. Theriot*, 534 So.2d 35 (La. App. 3d Cir. 1988).

As set forth above, courts should first determine which estate owes the servitude. *Roberson*, supra; *Sentell*, supra at 1682. The shortest straight line distance to the nearest public road determines which estate owes the servitude. *Id.* The party arguing that the servitude should instead be imposed on another estate bears the burden of establishing that one or the two exceptions is applicable. See, e.g., *Anderton v. Akin*, 493 So.2d 795 (La. App. 2d Cir 1986), *writ denied*, 497 So.2d 1014 (La.1986).

The shortest distance from the May property to a public road was a route due north from the May property to Lisle Peters Road. The court surmised that this route would involve a water crossing and the construction of a bridge of considerable length. Because the route was covered by water and the costs associated with it would be so exceptional that from a practical standpoint, the crossing would be economically unfeasible to build, the trial court found this route unacceptable.

The trial court then determined that the southern route from the May property traversing the Stream property to Big Lake Road was the shortest feasible route. This led the trial court to determine that the Stream property would bear the entirety of the servitude.

Once the trial court determined that the Stream property owed the entire burden to the dominant May property, the trial court found that a route due south would be the most injurious to the Stream property. This finding was based on the testimony

7

of Gene Dark, general contractor for Stream. Mr. Dark testified that a directly southern route would be the most injurious to the Stream property by crossing future fairways and residential lots. The trial court was satisfied that Stream intended to develop the northern portion of its property into restricted subdivisions and a golf course much like it had done with the southern portion of their property.

In light of this and other factors, the trial court granted a right of passage to the Mays that Mr. Dark testified and the court felt was the least injurious to the Stream property. The route granted by the trial court traversed the northen portion of the Stream Property and connected the May Property to Big Lake Road. The Mays argue that the trial court erred in choosing this route as it required the building of an expensive bridge. We do not agree.

The Appellants point out that the *Davis* case cited by the trial court found that the building of a bridge is an exception to La.Civ.Code art. 692's call to grant the most direct route to a public road when granting a right of passage to an enclosed estate. While the building of a bridge has been held to be an exception recognized under Article 692's call for usage of the shortest route, it has not been held that if a bridge is necessary to use a certain route, then the route must be rejected. The trial court actually recognized this exception as it rejected the directly shortest route over Kara Bay because it would necessitate the building of long, expensive bridge.

Here, the route chosen by the trial court necessitates the building of a bridge, but the actual costs associated with building this bridge is the subject of contention. Appellants rely on the testimony of Charles Ladner, an expert in the field of civil engineering. Mr. Ladner testified that the costs associated with building a bridge along the route the court chose would be one hundred, sixty thousand dollars, plus or

minus twenty-five percent. The trial court also heard the testimony of Mr. Tad Martin, an adjacent landowner. Mr. Martin had a bridge installed spanning the same drainage canal as the new May bridge would span, and it cost him eighty-three thousand dollars just a few years before. Therefore, the trial court was presented with evidence that supported finding a range of eighty-three thousand to two hundred thousand dollars for the cost of the Mays to build this bridge.

Appellants assert that this cost is not economically feasible. They rely on the case of *Pearson*, 534 So.2d 35. In *Pearson*, the court found that the cost associated with building a bridge, twenty-five thousand dollars, was prohibitive. Our reading of the case is that the *Pearson* court used this cost simply as one factor to reject the shortest route from an enclosed estate to a public road. Further, the *Pearson* case is distinguishable from the present case in the following ways: (1) the parties in *Pearson* did not have necessary permits to cross the canal, and there was no guarantee that the parties in *Pearson* could get permission to cross the canal from the appropriate authority; (2) the canal in *Pearson* was used by boat traffic and would have to be maintained so as not to prevent any boat traffic; (3) the route that would include a bridge in *Pearson* was not the least injurious route to the intervening landowner; and (4) the land values involved in *Pearson* were not comparable to those in the present case.

While the costs associated with building the bridge in this case are considerably higher than that in *Pearson*, it is also true that the value of the Mays property, purchased with the knowledge of its enclosed status, was also considerable. The Mays paid four hundred thousand dollars, or about fifteen thousand dollars per acre for approximately twenty-seven acres of dry land for the building of their family

9

home. Moreover, it is also true that the Stream property is also very valuable property.

The cost associated with building a bridge is one factor for the trial court to consider. If the trial court would have chosen the route of the right of passage as per the Appellants' request, it would necessitate an adjustment of damages owed to Stream. First, the property taking damages of twenty-five thousand dollars would have to be raised to reflect the taking of nearly an acre more of land. At the value that the trial court assigned to the land taken, it would be approximately an extra twelve thousand dollars in takings damages. However, the land to be taken along the appellants suggested route would more likely have a higher value than that given to the land chosen by the court. The land to be taken on the route the trial court chose is along the northern property line of the Stream property. The land to be taken on the route the Appellants suggest would cross six proposed residential lots and two fairways. Arguably, the value of the land to be taken along the route suggested by the appellants would be closer to the forty-eight thousand dollars per acre as suggested by Mr. Daniel Plauche, Stream's expert on property valuation, than that of the ten thousand dollars per acre as suggested by Mr. Leonard E. Pauley, Jr., the Mays' expert on property valuation.

Second, the trial court would arguably have had to have made a substantial award of severance damages to Stream.[1] The report of Mr. Plauche states that the Appellants' requested route would cross six proposed residential lots and fairways. With a subdivision development ratio of three lots per acre, and "raw" land value at

_____

[1] The trial court granted Stream twenty-five thousand dollars ($25,000.00) in severance damages, however this court reverses the trial court finding and sets the severance damages to zero. See discussion in Assignment of Error #2.

forty-eight thousand dollars per acre, severance damages "affect" the equivalent of two acres or ninety-six thousand dollars in land. Further, the "affect" on rerouting the golf course design so the affected fairways incorporate a twenty foot wide road easement would also be considerable. Mr. Plauche estimated in his report that a value of one hundred thousand dollars as minimum compensation to redesign a golf course route with the least detrimental effect on fairways due to a twenty foot wide easement that is 2,640 feet or more in length running through the golf course. Appellants' expert, Mr. Leonard E. Pauley, Jr., asserts that there is no devaluing of Stream's property, regardless of the route chosen for the right of passage.

To compare the economic feasibility of the route chosen by the trial court to that proposed by the appellants, we need to find an approximate cost for each route. The cost of the route granted by the trial court includes bridge building costs and takings damages. The cost of building a bridge has a range of eighty-three thousand to two hundred thousand dollars. This cost, when added to the taking damages of twenty-five thousand dollars, totals anywhere from one hundred and eight thousand dollars to two hundred, twenty-five thousand dollars.

The cost associated with the route proposed by the appellants include higher takings damages and severance damages. The takings damages along the appellants' proposed route have a range of thirty-seven thousand dollars to seventy thousand dollars. The severance damages awarded can range anywhere from zero dollars up to one hundred and ninety-six thousand dollars. Therefore, the range of cost of the proposed route of the appellants is thirty-seven thousand dollars to two hundred sixty-six thousand dollars.

11

It is clear from a reading of the record that there is evidence to support the argument that the cost associated with the route chosen in this case, inclusive of the costs of building a bridge, are comparable to the costs associated with using the route requested by the appellants, inclusive of the potential taking and severance damages. Accordingly, we must conclude that the trial court did not commit manifest error in determining that the cost of building this bridge is economically feasible. Further, given that the cost of the two routes is comparable to the Mays, and the trial court decided to follow the direction of La.Civ.Code art. 692 to locate the route along "the location least injurious to the intervening lands," we find that it was not unreasonable for the trial court to choose the route it chose.

The trial court is given much discretion under the manifest error standard of review. There is evidence in the record to support the trial court's decision relating to the route for the right of passage. We find no basis in Appellants' assertion that the trial court's choice of route is manifestly erroneous or clearly wrong. Accordingly, we affirm the trial court's choice of the route for the right of passage granted to Appellants.

**ASSIGNMENT OF ERROR #2:**

Louisiana Civil Code Article 689 states that if an enclosed estate claims a right of passage, "[The owner] is bound to indemnify his neighbor for the damage he may occasion."

A trial judge has wide discretion in determining the amount of damages occasioned by the party on whose estate the right of passage is fixed. *Hutchison v. Jackson*, 399 So. 2d 1238 (La. App. 3 Cir. 1981); *Collins v. Reed*, 316 So. 2d 134 (La. App. 3 Cir.), *writ denied*, 319 So.2d 444 (La. 1975).

Both Appellants and Appellee used experts to testify as to the value of the Stream property on a per-acre basis. The expert for Stream, Mr. Daniel Plauche, testified that the Stream land was worth forty-eight thousand dollars per acre, whereas the expert for the Mays, Mr. Leonard Pauley, opined that the Stream land was worth only ten thousand dollars per acre. According to a description ordered by the trial court, the total acreage of Stream property taken for a twenty foot May right of passage is about two acres.

The trial court awarded damages to Stream for the property taken in the amount of twenty-five thousand dollars. Appellants argue that the trial court erred by awarding excessive damages for use of the right of passage. We do not agree.

This award of twenty-five thousand dollars or twelve thousand, five hundred dollars per acre is only slightly more than the ten thousand per acre value given by Mr. Pauley and is substantially less than the forty-eight per acre value given by Mr. Plauche.

Under the circumstances, the record supports the trial court's finding that the Mays owed Stream twenty-five thousand dollars for the taking of the property for the right of passage and the trial court's assessment should be upheld. Therefore, we affirm the trial court's finding that the Mays owe twenty-five thousand dollars for the taking of the property for the right of passage.

"Severance damages are ordinarily calculated as the difference between the market value of the remaining property immediately before and immediately after the taking. The burden of proving alleged severance damages to the remainder of property involved rests upon the owner who must establish such damages with legal

certainty by a preponderance of evidence." *State, through the Dep't of Highways v. Denham Springs Dev. Co. Inc.*, 307 So.2d 304, (La.1975) [Citations omitted].

Mr. Daniel Plauche, Stream's expert appraiser, testified that if the route chosen by the court were to be just south of the Colonial Pipeline traversing the northern portion of the Stream property, which is the route the court eventually did choose, his conclusion would be that there would be no severance damages in that taking. Consistent with this testimony, Mr. Plauche offered no evidence to justify an award of severance damages.

Given the above noted lack of evidence of severance damages, we find that the trial court's assessment of twenty-five thousand dollars for severance damages was clearly wrong. The record is devoid of any evidence that the Stream property was any less valuable after the granting of the right of passage than before. Stream failed to meet its burden of proof and establish that it was due any severance damages. As such, we reverse the trial court's ruling related to the assessment of severance damages.

**ASSIGNMENT OF ERROR #3:**

Louisiana Civil Code Article 690 states, "The right of passage for the benefit of an enclosed estate shall be suitable for traffic that is reasonably necessary for the use of that estate." "The scope of the right of passage granted over neighboring lands is determined by the actual needs of the enclosed estate." *Davis*, 794 So.2d at 71-72.

As before, the standard of review for a finding of fact such as this is that of manifest error. Appellants assert that the trial court erred by giving a twenty foot right of passage instead of a thirty foot right of passage which is what is required for the use of the land. We do not agree.

14

Appellants rely heavily on the testimony of Charles Ladner. Mr. Ladner testified that he concluded a thirty foot wide right of passage was necessary for the Appellants to use their property. Mr. Ladner reached his conclusion based on sixteen foot traveling surface. Mr. Ladner stated that sixteen feet was the minimum traveling surface width needed for two cars to pass simultaneously.

However, on cross examination, Mr. Ladner admitted that two vehicles could pass one another, albeit with difficulty, on the Stream road. The Stream road has a traveling surface that is only ten feet in width. Moreover, on appeal, the Appellants are requesting a route that uses the Stream road.

The court finds La. R.S. 48: 495 to be helpful in deciding this issue. Louisiana Revised Statute 48: 495 requires that parish and local roads must be twenty-five feet in width. Parish and local roads carry far more traffic than a single driveway and suggests that a twenty foot width would not be unreasonable. Moreover, in the *Pearson* case cited in Assignment of Error #1, we held that a width of twenty feet was sufficient for a family dwelling.

Therefore, we find that there is evidence in the record that a twenty foot right of passage is sufficient for the reasonably intended use of the estate. As such, in that regard, this court finds that the trial court's decision to set the width of the right of passage at twenty feet was not manifestly erroneous or clearly wrong. Accordingly, we affirm the ruling of the trial court.

**CONCLUSION**

The judgment of the trial court is affirmed in part, and reversed in part. Costs of this appeal are assessed equally against the parties.

**AFFIRMED IN PART, REVERSED IN PART.**

15