794 So.2d 68 (2001)
John P. DAVIS, Plaintiff-Appellant,
v.
Douglas CULPEPPER, Defendant-Appellee.
No. 34,736-CA.
Court of Appeal of Louisiana, Second Circuit.
July 11, 2001.
Rehearing Denied August 16, 2001.
*70 Sentell Law Firm, LLC, by C. Sherburne Sentell, Jr., Minden, Fred C. Sexton, Jr., Counsel for Appellant.
Campbell, Campbell & Marvin, by J. Schuyler Marvin, Minden, Counsel for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
BROWN, J.
Defendant, Douglas Culpepper, owns a 58-acre tract of land near Lake Bistineau in south Webster Parish. It is undisputed that his property is surrounded by other lands and that Leachman Road is the nearest public way. Separate tracts owned by plaintiff, John P. Davis, and Willamette Industries lie between defendant's property and Leachman Road. In the 1950s, defendant's father built a logging road across the Willamette property to Leachman Road to haul pulpwood from what is now defendant's tract. Defendant purchased the 58 acres in 1996. At that time, he sold some timber and rebuilt the road across Willamette's property to accommodate the removal of the timber. Defendant, however, chose to use an old skidder or logging road across plaintiffs property for general access to his land.
In 1994, two years before defendant bought his land, plaintiff replanted his property, including the old trail, with pine seedlings. In 1998, citing problems with trespassers, plaintiff put up a fence and gate at his property line where the logging trail started at the end of Leachman Road. Defendant tore down the fence and gate and bulldozed a new road across plaintiff's property following the old trail. Defendant also buried a water line down the center of the new road.
Plaintiff re-erected the fence and gate. Defendant promptly tore both down again. Plaintiff demanded that defendant remove the road. Claiming ownership of the road, defendant refused plaintiff's request. Thereafter, plaintiff filed the instant action *71 seeking damages for trespass. Plaintiff also sought a restraining order and peace bond. Defendant reconvened, claiming ownership of the road. Following a motion by plaintiff for summary judgment, defendant amended his reconventional demand to alternatively claim a right of passage. The trial court granted partial summary judgment and dismissed defendant's claim of ownership by acquisitive prescription.[1]
The trial court declined to issue a restraining order or peace bond and allowed defendant access over plaintiff's land until the conclusion of the trial, which was held on four non-consecutive days over a six-month period.
The trial court found that defendant was the owner of an estate with no access and recognized his claim to a right of passage over plaintiffs property where the "disputed road" was located. The court noted that because an electrical line servitude already existed at this location the disturbance caused by the road would be minimal.
The trial court rejected defendant's argument that he was entitled to a gratuitous right of passage and his claim that he was due damages for plaintiff's disturbance of his "pre-existing right of passage." The court also found that defendant had no right to run a water line across plaintiffs property without his consent and ordered defendant to remove the line. The court then awarded plaintiff indemnity in the amount of $1,000. Both parties have appealed. We reverse the trial court's grant of defendant's reconventional demand for a forced passage across plaintiffs land and the denial of plaintiffs trespass claim.

Discussion

Servitude of Passage
Louisiana Civil Code Articles 689 through 696 govern claims by owners of enclosed estates for access to a public road. Articles 689-692, 695 and 696 address the legal servitude of passage for indemnity in favor of an enclosed estate. La.C.C. art. 693 addresses the situation in which an estate becomes enclosed as a result of a voluntary act or omission of the owner and article 694 recognizes a gratuitous passage when lands have become enclosed as a result of partition or alienation. Neither article 693 nor the gratuitous passage provided for in article 694 are applicable in the instant case.
Article 689 provides that:
The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for damage he may occasion.
Article 692 directs which neighboring property is bound to furnish the servitude of passage. La.C.C. art. 692 provides:
The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands.
The legal servitude of passage is predicated on necessity. The test is satisfied when an estate has no access or the access is insufficient for the needs of the estate. See Yiannopoulos, La. Civil Law Treatise, Predial Servitudes, § 93 (2d Ed.1997). The scope of the right of way granted over neighboring lands is determined by the actual needs of the enclosed *72 estate. In this case, defendant's tract is used for growing timber, hunting and recreational purposes.
An estate that has access to a public road is not entitled to a forced right of passage. Plaintiff argues that the Willamette logging road provides sufficient passage for timber and hunting purposes. This same factual situation was addressed by the court in Robinson v. Herring, 20 So.2d 811 (La.App. 2d Cir.1944). In Robinson, the court stated:
In a case of this character the test is not whether the right of way sought is more serviceable, more convenient or more practical, than any other route available, but is whether it is absolutely necessary, all things considered, for the needs and used of the enclosed estate. If the necessity does not exist the right to condemn likewise does not exist.
It is true that plaintiffs use of the road that leads northeasterly from his property to the highway is by sufferance of the owners of the land across which the road goes, but it is a way to the highway, and so long as it is open to plaintiffs use he is not in a position legally to demand a servitude of passage to the highway across the lands of others. When, and if, he is denied the use of this route to the highway, he may then avail himself of the beneficent provisions of the law, which guarantee an enclosed land owner access to the nearest highway.
The law of this state in no uncertain manner zealously guards and protects all citizens in the possession and enjoyment of their real estate. Ownership, full and complete, may be modified to any extent only in the manner and in the cases defined by law. The right of any land owner to force passage over his neighbor's land may only be exercised in cases of necessity. This right does not arise merely from inconvenience, nor is it determined by choice.
Id. at 813.
Defendant, Douglas Culpepper, testified that his father, back in 1958-59, built a road across the Willamette tract (then owned by Obit Meadors) for the purpose of hauling pulpwood from his property. Defendant noted that he "looked that road over" when he bought his land in 1996, but decided not to use it for access because the road was "muddy." On cross-examination, defendant admitted that he used the Willamette road when he cut some timber in 1996-97, but that he chose to use the old road on plaintiffs property for general access because it was a graded road and, as such, was in better condition. He later admitted that the Willamette road was the shortest route of the two but stated that he did not think it could be used in winter.
Wayne Williamson, a retired civil engineer and surveyor, testified that he used the road across the Willamette tract in the 1960's to get to lakefront property owned by defendant's relatives ("Culpepper Estates"). According to Williamson, the road, though narrow, was easily negotiated.
Travis Camp, who owns one of the lots in Culpepper Estates, testified that he has used both the old road across plaintiffs land and the road across the Willamette tract to access his property. Camp noted that the Willamette road was the closest to his property and that he used it until its condition deteriorated. According to Camp, both of these roads were simply old logging trails.
On cross-examination, Ricky Reynolds, who is in the logging business, stated that when he cut timber on defendant's land in 1996-97, his crew dozed an access road across the Willamette tract. It was his understanding that defendant had Willamette's *73 permission to build the road. James Dent, the general dirt contractor who graded the road for Reynolds, stated that the road across the Willamette property was in pretty good shape so all he had to do was grade the ruts.
Paul Culpepper, defendant's brother, prepared a survey plat for defendant. (See attachment). After setting forth the general measurements and drainage elevations, he believed that it would be necessary to install culverts or spans across the skidder trail on the Willamette tract to accommodate drainage. Culpepper admitted that he had only been on this road once or twice as a teenager. Because the road was rutted and rough, he and his family used the old road across plaintiffs land"the [condition of the old] road [on plaintiffs property] was so superior, you'd be an idiot to try to go across to Willamette."
On cross-examination, Culpepper testified that, without a doubt, the shortest route from defendant's property to the nearest public road is across the Willamette tract. Culpepper conceded his lack of knowledge as to the costs or requirements for rebuilding the existing Willamette road or for constructing a new passageway.
Don Sayers, who lives at the 90 degree turn in Leachman Road, stated that for the 14 years that he has owned his property, there has been a road from Leachman Road across the Willamette property to defendant's land. Sayers further noted that this road, which "everyone" uses during hunting season, is passable year-round. According to Sayers, lakefront lot owners also use this road.
Don Mitchell, owner of Mitchell Dirt & Asphalt and a general contractor for over 46 years, was the only witness to testify regarding the costs associated with building an access road. Mitchell stated that the cost to remove the road bisecting plaintiffs property and replace the topsoil would be approximately $1,295. Mitchell then testified that it would cost another $2,200 to build a road of similar length (550 feet) in another location, i.e. across the Willamette tract, using the material from the old road. On cross-examination, Mitchell testified that the cost of a longer road across Willamette's tract would be $5,500; this includes the fact that a pipe would probably be necessary for drainage purposes and also that more of a base would be required. If a culvert was needed, that would be an additional $600.
The evidence shows that defendant has access across Williamette's property to Leachman Road that is sufficient for the needs of his estate. The trial court was clearly wrong and erred in imposing a servitude of passage upon plaintiffs estate in light of the clear evidence that defendant's property has sufficient access and that there is thus no necessity for a forced passage.
In addition, as noted by the supreme court in Rockholt v. Keaty, 256 La. 629, 237 So.2d 663 (1970), the owner of an enclosed estate does not have discretion to choose which estate should be burdened with a legal right of passage. A two-step analysis is required by article 692 (former article 700). First to be determined is which estate owes the servitude of passage. Vermilion Parish School Board v. Broussard, 263 La. 1104, 270 So.2d 523 (1972); Rockholt, supra; Roberson v. Reese, 376 So.2d 1287 (La.App. 2d Cir. 1979), citing A.N. Yiannopoulos, Enclosed Estates: Louisiana and Comparative Law, 23 Loy. L.Rev. 343, 367 (1977). Only then should the courts engage in a balancing test to determine where on the servient estate the passage should be located. Mitcham v. Birdsong, 573 So.2d 1294 (La. App. 2d Cir.1991); Roberson, supra; C. *74 Sherburne Sentell, III, Comment, Fixing the Right of Passage from an Enclosed Estate: Deciding Where to Break Out Using Louisiana Civil Code Article 692, 54 La. L.Rev. 1659, 1670 (1994).[2]
The general rule of La.C.C. art. 692 is that the estate providing the shortest route to the nearest public road must provide the right of passage. Roberson, supra; Mitcham, supra; Morgan v. Culpepper, 324 So.2d 598 (La.App. 2d Cir. 1975), writs denied, 326 So.2d 377, 378 (La.1976). As recognized by the legislature in its use of the word "generally" in article 692, there are situations that allow the servitude of passage to be imposed on an estate that does not provide the shortest route. Rockholt, supra; Morgan, supra; Rieger v. Norwood, 401 So.2d 1272 (La.App. 1st Cir.1981). In the absence of exceptional circumstances, it is only the estate that provides the shortest access to the nearest public road that will be burdened with the servitude. Vermilion Parish School Board, supra; Morgan, supra.
The first exception recognized by the jurisprudence is when the estate which provides the shortest route is covered by water or is otherwise not accessible year-round. See Morgan, supra; Mitcham, supra; Morris v. Nesbitt, 9 So.2d 75 (La. App. 2d Cir.1942); Tessier v. Medical Center of Baton Rouge, Inc., 93-0075 (La.App. 1st Cir.03/11/94), 636 So.2d 928; Bouser v. Morgan, 520 So.2d 937 (La.App. 3d Cir. 1987). The second derogation from the general rule is when the costs associated with crossing the estate which is the shortest distance from the public road are so exceptional that from a practical standpoint it is economically unfeasible to build. See Mercer v. Daws, 186 So. 877 (La.App. 2d Cir.1939); Pearson v. Theriot, 534 So.2d 35 (La.App. 3d Cir.1988).
As set forth above, courts should first determine which estate which owes the servitude. Roberson, supra; Sentell, supra at 1682. The shortest straight line distance to the nearest public road determines which estate owes the servitude. Id. The party arguing that the servitude should instead be imposed on another estate bears the burden of establishing that one of the two exceptions is applicable. See, e.g., Anderton v. Akin, 493 So.2d 795 (La.App. 2d Cir.1986), writ denied, 497 So.2d 1014 (La.1986).
In the instant case, both parties submitted survey plats of their property as well as surrounding tracts. Both surveys clearly show that the shortest distance from defendant's estate to the nearest public road, Leachman Road, is not from plaintiff's land (a distance of 443 feet), but rather from the Willamette tract (a distance of 388 feet) which forms the western boundary of defendant's tract.
Therefore, in seeking to derogate from the general rule that the estate that provides the shortest access, in this case the Willamette tract, is the one that owes the servitude of passage, defendant had the burden of proving the applicability of one of the two exceptions, i.e. that the Willamette property was covered by water or otherwise inaccessible year-round or that the costs required to construct a road on the Willamette tract were so astronomical as to be an economically impossible burden. His evidence fell woefully short of showing that any exception existed.
*75 Willamette Industries is not a party to the instant action, nor have they stopped defendant from using the existing way across their property; until such time, defendant has no action to force a right of passage. Defendant, of course, may negotiate with or institute a separate action against Willamette Industries to secure a right of passage for his estate should he be denied access.

Trespass Damages
In the instant case, it is undisputed that there was neither agreement nor judicial decision giving defendant authority to use the old access road located on plaintiffs property. In this factual and legal posture, defendant used and improved the road (and, in the process, destroyed standing timber) without the consent of plaintiff and is therefore guilty of trespass and liable for any attendant damages.
Trespass is defined as an unlawful physical invasion of the property or possession of another person. Sullivan v. Wallace, 33,387 (La.App.2d Cir.08/23/00), 766 So.2d 654, writ denied, 00-2647 (La.11/17/00), 774 So.2d 978; Harrington v. Abshire, 98-1651 (La.App. 3d Cir.03/31/99), 732 So.2d 677. A trespasser is one who goes upon another's property without his consent. Sullivan, supra; Britt Builders, Inc. v. Brister, 618 So.2d 899 (La.App. 1st Cir.1993).
A person damaged by trespass is entitled to full indemnification. Where there is a legal right to recovery, but the damages cannot be assessed exactly, the court has reasonable discretion to assess the value based on all of the facts and circumstances of the case. Britt Builders, Inc., supra. Damages for dispossession of one's property are regarded as an award of compensatory damages for violation of a recognized property right and are not confined to proof of actual pecuniary loss. Id.
As reaffirmed recently by the supreme court, one wronged by trespass is entitled to recover general damages, including damages for mental anguish. Williams v. City of Baton Rouge, 98-1981, 98-2024 (La.04/13/99), 731 So.2d 240. See also Ard v. Samedan Oil Corp., 483 So.2d 925 (La.1986); Beacham v. Hardy Outdoor Advertising, Inc., 520 So.2d 1086 (La.App. 2d Cir.1987); Harrington, supra.
An owner of timber is entitled to recover damages for the loss of young, unmerchantable trees, as well as the reforestation cost of the cut trees. Evans v. B.R. Bedsole Timber Contractors, Inc., 521 So.2d 837 (La.App. 2d Cir.1988); Isdale v. Carman, 96-1435 (La.App. 3 Cir.04/02/97), 692 So.2d 687. Likewise, one who establishes that his trees were wilfully and intentionally destroyed is entitled to treble damages and attorney fees under La.R.S. 3:4278.1. Haworth v. L'Hoste, 95-0714 (La. App. 4th Cir. 11/30/95), 664 So.2d 1335, writ denied, 96-0408 (La.03/29/96), 670 So.2d 1235.[3]
*76 Patsy Rogers, who lives at the end of Leachman Road, observed plaintiff planting his young seedlings a few years after he cut the timber on his property. According to Mrs. Rogers, the old road was not passable after that except by an ATV because of the young seedlings growing there. Several years later, she saw defendant working on the old road across plaintiffs land. Mrs. Rogers testified that defendant used a bulldozer to cut down the trees and widen the path of the road. He then left the felled trees, several older ones as well as the newly planted seedlings, on plaintiff's property "to rot." While she didn't see defendant actually tear down the fence that plaintiff had placed across the road, defendant related to her that he took it down and that he would do it again should plaintiff re-erect the enclosure.
Plaintiff, John Davis, testified that he had his entire tract planted in fast growing pine seedlings in 1994. The trees were evenly spaced, including across the old access roadway. According to plaintiff, he planted the entire area to prevent trespassers and hunters from using his land.
Plaintiff noted that the line between his and defendant's property has always been clearly marked with paint. There was also an old fence along the boundary. The trees had been there for five years when defendant put in the new road. Not only did he doze the road, but he dug ditches and filled in potholes. At that time, some of the trees were 6-7 feet tall. Upon learning that defendant had upgraded the logging trail across his property, plaintiff erected a barbed wire fence. Not only did defendant fail to ask his permission, but he refused to discuss the matter with him at all.
Lee Mudd, a consulting forester, testified about remedying the damage to plaintiffs property. Mudd noted that plaintiff has a pine plantation consisting of 6-7 year old trees on his property. The area of the road dozed by defendant was 22 feet by 500 feet, approximately ¼ of an acre. To replant that area, it would take approximately 150-175 trees with 6-7 years growth at a cost of $50 per tree ($7,500 $8,750). Mudd noted that to plant seedlings rather than 6-7 year old trees, the cost would be approximately $150.
When asked the fair market value of the trees destroyed, Mudd opined that the more correct inquiry was how much those trees would have enhanced the land's value. According to Mudd, that figure is $300-400 per acre; considering that trees on ¼ of an acre were destroyed, the amount is $100.
Don Mitchell, a general contractor and owner of Mitchell Dirt & Asphalt, testified that the cost to remove the road and water pipeline and replace the topsoil on plaintiffs property would be $1,295.
Defendant, Douglas Culpepper, stated that he works with his brother, who is a surveyor, and is also a timber buyer. He admitted his familiarity with survey lines, boundary lines, etc. He testified that he knew he didn't own the roadway when he dozed it. Although he knew that property was owned by plaintiff, he nonetheless didn't ask permission because he felt that he had the right to go across plaintiffs land based upon his family's history of similar usage. Defendant pointed out that people have always hunted, fished and camped "back there." He didn't feel the need to secure permission from anybody because "nobody else did."
Defendant admitted that he cut plaintiffs fence down in July 1998 because he *77 had a family and church party on his property at that time. Had plaintiff re-erected the fence, "I would have cut it again." Defendant, however, denies destroying anything [else] on plaintiff's property. Defendant noted that he has never had to ask any of the adjoining landowners for access; he simply went the way his father and uncle showed him and "never had any reason to ask for permission." Regarding the water pipeline he buried down the center of the old road, defendant noted that he didn't ask anyone's permission because he didn't feel like he was hurting anything.
Considering the above expert and lay testimony, we hereby award the following damages:

(1) Mental anguish, harassment
 and inconvenience: $2,500
(2) Cost to remove pipeline and
 road surface: $1,295[4]
(3) Replacement value of trees: $8,750
(4) Treble damages based upon
 expert's decreased value calculation
 of $100: $ 300
(5) Attorney fees, trial and appeal: $9,000

Conclusion
For the reasons set forth above, the judgment of the trial court is reversed. We hereby render the following judgment.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, John P. Davis, rejecting and dismissing with prejudice Douglas Culpepper's reconventional claim for a legal servitude of passage.
IT IS FURTHER ORDERED that there be judgment in favor of plaintiff, John P. Davis, and against defendant, Douglas Culpepper, in the amount of $21,845.00, said amount representing damages for trespass, as well as treble damages and attorney fees for defendant's violation of La.R.S. 3:4278.1. Plaintiff is further awarded legal interest thereon from the date of judicial demand.
IT IS FURTHER ORDERED that Douglas Culpepper's reconventional claim for damages and attorney fees is hereby DENIED.
IT IS FURTHER ORDERED that defendant, Douglas Culpepper, will bear all court costs, here and below, as well as the expert witness fee of forester Lee Mudd.
REVERSED AND RENDERED.

APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY, and PEATROSS, JJ.
Rehearing denied.
*78 
NOTES
[1] This ruling was not appealed.
[2] As noted by Professor Yiannopoulos, "certain decisions might be taken to indicate that courts first locate the right of way on the estate that offers the shortest route to the public road and then consider the least injurious place within that estate." A.N. Yiannopoulos, The Legal Servitude of Passage, 71 Tul. L.Rev. 1, 21 (1996).
[3] La.R.S. 3:4278.1 provides in part:

(A) It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
(B) Whoever wilfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.
As noted by the court in Morgan v. Fuller, 441 So.2d 290 (La.App. 2d Cir.1983), writs denied, 443 So.2d 596, 599 (La.1983), this provision manifests an intent by the legislature to punish those who flagrantly disregard the property rights of timber owners.
[4] The trial court ordered defendant to remove the water line at his expense. We find, however, that the proper remedy is an award of damages.