# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 22, 2011

No. 09-30660
consolidated w/
Nos. 09-30897 & 09-31102

Lyle W. Cayce
Clerk

SCHOOL BOARD OF AVOYELLES PARISH,

Plaintiff-Appellee

v.

UNITED STATES DEPARTMENT OF INTERIOR,

Defendant-Appellant

-------------------------------------------------

SCHOOL BOARD OF AVOYELLES PARISH,

Plaintiff-Appellee

v.

UNITED STATES DEPARTMENT OF INTERIOR; ELDERWOOD
PROPERTIES,

Defendants-Appellants

v.

LE CHEVALIER, INCORPORATED, formerly known as, La Nuit, Inc.;
WILLIAM D. ARNOUDVILLE; CARLA BAUDIN ARNOUVILLE; CLAY
EMIL ROBLIN; CYNTHIA GAUTHIER ROBLIN; DAVID JOHN GUILLOT;
ANGELA WYNN GUILLOT,

Defendant-Appellees

-------------------------------------------------

SCHOOL BOARD OF AVOYELLES PARISH,

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

Plaintiff-Appellee

v.

UNITED STATES DEPARTMENT OF INTERIOR,

Defendant-Appellant

v.

LE CHEVALIER, INC., formerly known as La Nuit Inc.; WILLIAM D. ARNOUDVILLE; CARLA BAUDIN ARNOUVILLE; CLAY EMIL ROBLIN; CYNTHIA GAUTHIER ROBLIN; DAVID JOHN GUILLOT; ANGELA WYNN GUILLOT,

Defendants-Appellees

---

Appeals from the United States District Court
for the Western District of Louisiana

---

Before GARZA, STEWART, and HAYNES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

These three closely related appeals arise out of two district court cases: *Avoyelles Parish School Board v. United States*, No. 08-1364 (W.D. La.) ("*Avoyelles I*"), and *Avoyelles Parish School Board v. United States*, No. 08-1374 (W.D. La.) ("*Avoyelles II*"). Each case involves a different tract of land (respectively, the "*Avoyelles I* tract" & "*Avoyelles II* tract") owned by the Avoyelles Parish School Board ("School Board"). Neither tract is accessible by public road, and both share borders with the Lake Ophelia Wildlife Refuge ("Refuge"). The Refuge is owned by the United States and operated by the United States Fish and Wildlife Service ("FWS"), an agency within the United States Department of Interior ("Department"). The School Board filed these

2

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

suits in state court against all adjoining landowners, including the Department, to fix the School Board's legal rights of passage to the respective enclosed lands. The Department removed the cases to federal court, and the School Board amended its complaints to state causes of action against the Department pursuant to the Quiet Title Act, 28 U.S.C. § 2409a ("QTA"). In both cases, the district court fixed rights of passage that burdened Refuge lands. The court further concluded that, pursuant to the rights of passage, the Department could not impose certain desired restrictions on the School Board's actions on Refuge lands. The Department appeals that holding. The right of passage in *Avoyelles II* also burdened the land of Elder Properties ("Elder"). Elder appeals the court's choice of route. The three appeals were consolidated. For the following reasons, we REVERSE both judgments in full and remand for further proceedings.

I

Both parcels of School Board lands at issue are so-called "Section 16" lands. Prior to Louisiana's admission to the Union, the sixteenth section of each township was set aside by the federal government "for the support of schools within" the township. Act of April 21, 1806, ch. 39, § 11, 2 Stat. 391, 394. After Louisiana's admission to the Union, the title of Section 16 lands was found to lie with the State. *State v. Humble Oil & Ref. Co.*, 197 So. 140, 143 (La. 1940); *see also Louisiana v. Union Oil Co. of Cal.*, 458 F.3d 364, 367 (5th Cir. 2006) ("[T]he State is the fee title owner of the Section 16 lands involved in this law suit . . . ."). Louisiana treats Section 16 lands as effectively in trust to the State for purposes of education. *Ebey v. Avoyelles Parish Sch. Bd.*, 861 So. 2d 910, 914 (La. Ct. App. 2003), *cert. denied*, 871 So. 2d 349 (La. 2004). "The management of these trust lands is vested by the State in the local school boards." *Id.* Section 16 lands themselves are used for various purposes, such as hunting, fishing, timber, and minerals, with the ultimate benefit of the use going to education. *See, e.g.*, *id.* at 911.

3

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

These two particular parcels of Section 16 lands are enclosed estates—estates not accessible directly by public road.  The enclosed parcel at issue in *Avoyelles I* is bounded for approximately one-half mile on the east by the Refuge, and otherwise adjoins private lands and bayous.  The enclosed parcel at issue in *Avoyelles II* is bounded for approximately 0.1 mile on the east by the Refuge and otherwise is bounded by private lands.  Historically, access to both parcels included passage through the Refuge to Lac Long Road, an improved public road.  After some distance on Lac Long Road, the historical paths to the parcels diverge.  To reach the *Avoyelles I* parcel, one continues through the Refuge along private roads until one reaches the border of the School Board's land.  To reach the *Avoyelles II* parcel, one follows a different private road, Buck Road, that eventually leads through Elder's lands before reaching the School Board's.[1]

After some time, Elder began obstructing passage along the Buck Road route with a locked gate, forcing the School Board to rely on all-terrain vehicles ("ATVs") to reach its lands via the Refuge.  The FWS, however, eventually soured on both the ATV use and, more generally, the unrestricted passage through Refuge lands.  It accordingly announced new permit conditions for the School Board and its invitees.  In particular, the FWS sought to restrict the hours of passage, prohibit overnight parking of cars, and limit the use of some types of vehicles.  The School Board signed an FWS permit regarding access to the *Avoyelles I* parcel that contained those restrictions.  It did not seek judicial review of the permit.

The School Board did, however, file two state court suits—one for each parcel—against the respective adjoining landowners seeking to enforce its rights

---

[1] This portion of Buck Road was also known as Old Tram Road.  Following a dispute in the early 1990s regarding passage over Refuge lands, a new road, the "Dog Leg" road, was added to complete the final portion of the passage to and through Elder's lands.  For ease of discussion, this opinion will treat the Dog Leg Road as part of Buck Road.

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

of passage under state law.  Specifically, in *Avoyelles I*, the School Board sued (1) the Department; (2) White Oak Farms, Inc.; (3) Bunkie Elevator and Gin Co.; and (4) Laborde Paradise, LLC ("Laborde").   In *Avoyelles II*, the School Board sued (1) the Department; (2) Bayou Lafourche, Inc.; (3) Elder Properties; (4) Le Chevalier, Inc.; (5) William and Carla Arnouville; (6) Clay and Cynthia Roblin; and (7) David and Angela Guillot.  The Department removed both cases to federal court, and in both cases the School Board amended its complaint to add a claim under the QTA.

In *Avoyelles I*, the Department did not dispute the School Board's entitlement to a right of way through the Refuge or the route thereof.  Rather, the Department sought to assert FWS's authority to impose conditions on the use of the School Board's right of way pursuant to the National Wildlife Refuge System Administration Act of 1966, as amended, 16 U.S.C. §§ 668dd-668ee ("Refuge Act").  The district court concluded on summary judgment that the Department could not impose all of its desired restrictions, in particular the restrictions on hours of use and vehicle types.  The Department appeals.

Various landowner-defendants involved in *Avoyelles II* disputed the appropriate route for the School Board's right of passage.  The district court trifurcated its proceedings to decide first, which nearby roads were public; second, what route the right of way would take; and third, the School Board's indemnification obligation.  The first stage was resolved after a trial and was not appealed.  In the second stage, the district court granted summary judgment in favor of a route, based on the historical route of access, through the property of both the Department and Elder.  As in *Avoyelles I*, the district court held that the FWS could not impose some of its restrictions on hours and vehicle types. The Department and Elder appeal.

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

## II

### A

It is well-settled that we have a duty, if necessary, to examine the basis of our jurisdiction *sua sponte.  Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987). We requested supplemental briefing on two matters that raised potential jurisdictional hurdles that would foreclose consideration on the merits.  We first asked whether the district court rendered a final appealable judgment in *Avoyelles I.  See* 28 U.S.C. § 1291 (granting jurisdiction over "appeals from all final decisions of the district courts of the United States").  The district court issued a "Memorandum and Judgment" that appears to have resolved the key issues between the parties, but that neglects to mention the School Board's claim against one landowner—Laborde.  Where a district court's order "disposes of one or more but fewer than all of the claims for relief asserted, or completely determines the rights and liabilities of one or more but fewer than all of the parties," we will ordinarily not treat the order as final and appealable.  *Tower v. Moss*, 625 F.2d 1161, 1164 (5th Cir. 1980).  The Department argues that the district court's judgment is nevertheless final and appealable because it plainly resolves all claims, despite inadvertently failing to list every party specifically. Upon close review, we agree.

We have routinely recognized a court's authority to rule implicitly on matters, including dismissal of claims.  *See, e.g.*, *Wilson v. Boise*, No. 00-30803, 2001 WL 422621, at *3 (5th Cir. Mar. 30, 2001) ("By failing to address Wilson's claim, the magistrate judge implicitly dismissed it."), *cert. denied*, 534 U.S. 961 (2001); *Lott v. City of Lubbock, TX*, No. 98-10447, 1999 WL 500689, at *1 (5th Cir. June 18, 1999) ("Lott's state law claims were implicitly dismissed for lack of jurisdiction.").  The School Board sought just one servitude in *Avoyelles I*, which it received.  The district court's grant of a servitude resolved all claims, regardless of whether all parties were explicitly addressed in the judgment.

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

B

However, we must also consider the jurisdictional effect of a more troubling feature of this litigation—namely, that the actual title holder of the lands, the State of Louisiana, has not been made party to these proceedings. "The management of these trust lands is vested by the State in the local school boards." *Ebey*, 861 So. 2d at 914. Nevertheless, the School Board is not the true landowner under Louisiana property law. That it brought this suit without the participation of the true owner raises the question of whether we should consider the case at all.

The Department concedes that the School Board has standing in this case as a constitutional matter. We agree. "The irreducible minimum constitutional standing requirement to invoke a federal court's article III jurisdiction is (1) injury-in-fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision." *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319 (5th Cir. 1999). The School Board meets these requirements. Both parcels of land are administered by the School Board for its own benefit. *See Ebey*, 861 So. 2d at 914. The School Board's inability to offer adequate passage to the lands poses an injury in fact, and that injury is fairly traceable to the adjacent landowners' unwillingness to grant passage or unwillingness to grant passage without restrictions. A favorable decision would negate any injury going forward.

The Department argues, however, that Louisiana law forbids the School Board from bringing this suit under its own name and urges us to vacate the judgments below as having been made without jurisdiction. Although the Department's supplemental briefing is imprecise with regard to the specific nature of the alleged jurisdictional defect, its argument most resembles a challenge to whether the School Board is the correct party in interest to bring this case. *See* FED. R. CIV. P. 17(a)(1) ("An action must be prosecuted in the

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

name of the real party in interest."). Real-party-in-interest issues, however, impose only a "prudential limitation" on us and may be waived by a party's failure to raise them. *Ensley*, 171 F.3d at 320 (holding that real-party-in-interest objection was waived); *see also In re Signal Int'l, LLC*, 579 F.3d 478, 487-90 (5th Cir. 2009) (same). The Department concedes that it failed to identify this issue until we prompted it to discuss our jurisdiction on appeal. Elder declined to assert this issue even in the requested supplemental briefing. Any real-party-in-interest issue is accordingly waived and is no obstacle to our consideration of this appeal on the merits.

The only remaining potential obstacle is the possibility that the State was an indispensable party to this litigation. *See* FED. R. CIV. P. 19. A person is a "required party" where

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). In the past, we have been willing to consider the omission of an indispensable party despite the fact that none of the litigants preserved the issue at trial. *See McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980). Because no party asserted the issue at the appropriate time, however, our focus is narrowed. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) (observing that, where a defendant fails to raise nonjoinder as an issue at trial, "it is quite proper to consider [the defendant's interest in joinder] foreclosed"). We look in particular to whether the omitted third party will be prejudiced by adjudication of the appeal in its absence. *See McCulloch*, 620 F.2d at 51 (citing *Sierra Club v. Hathaway*, 579 F.2d 1162, 1166

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

(9th Cir. 1978) ("[W]hen the judgment appealed from does not in a practical sense prejudicially affect the interests of the absent parties, and those who are parties have failed to object to non-joinder in the trial court, the reviewing court will not dismiss an otherwise valid judgment.")); 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 19.02[4][b][ii] (observing that consideration of failure to join indispensable party on appeal, where the issue was not raised in the district court, "would seem proper only when necessary to protect the absentee from serious prejudice").

The State of Louisiana, as the landowner, has more than a nominal interest in the treatment of Section 16 lands. *Union Oil Co.*, 458 F.3d at 367. Nevertheless, the traditional policy of the State has been "to treat [Section 16] lands as separate and distinct from all other State lands and to place them under the control of the school authorities." *Humble*, 197 So. at 144. Current statutes reflect school boards' broad authority to administer those lands.[2] *E.g.*, LA. REV. STAT. ANN. § 41:638. The School Board is required to administer the lands in accordance with the State's own educational purposes. *See Ebey*, 861 So. 2d at 915 ("We conclude Section 16 lands are held in trust by the State and managed by school boards 'in the manner of a statutory trustee' for the benefit of public education."). The Department has not identified any way in which the State's interests meaningfully diverge from the School Board's, or any other way in which the State's absence from this litigation leaves those interests inadequately protected. Although the absence of the State from this litigation gives us pause, it does not, in our view, ultimately bar us from considering these appeals on the merits.

---

[2] Admittedly, school boards are instructed by statute to bring certain types of suit—specifically, those for damages from trespass or to recover title—on the State's behalf. LA. REV. STAT. ANN. §§ 41:921-23, 41:961-63; *see also Union Oil Co.*, 458 F.3d at 367. These statutes do not affect our indispensable party analysis for claims under the QTA or article 689.

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

III

The Department argues that the district court erred by holding in *Avoyelles I* that the Department could not impose its desired restrictions on passage through the Refuge.[3] The Department argues that it has legal authority to impose restrictions on the entry and use of FWS refuge lands, and that any challenge to the restrictions it seeks to enforce should have come in the form of a challenge to the School Board's FWS permit, rather than through a separate action to fix a servitude. The School Board counters that the Department, like any property owner, is subject to the ordinary terms of Louisiana property law. The School Board argues that, under Louisiana law, it has a property right in its right of passage through the Refuge lands, and the Department cannot violate that property right by imposing unreasonable restrictions.

The Refuge Act forbids any person from "enter[ing], us[ing], or otherwise occupy[ing]" a refuge "unless such activities are performed by persons authorized to manage such area, or unless such activities are permitted either under [16 U.S.C. § 668dd(d)] or by express provision of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof." 16 U.S.C. § 668dd(c). The Refuge Act authorizes the Secretary, under such regulations as he may prescribe, to

> (A) permit the use of any area within the System for any purpose, including . . . access whenever he determines that such uses are compatible with the major purposes for which such areas were established . . . ; and

> (B) permit the use of, or grant easements in, over, across, upon, through, or under any areas within the System for purposes such as . . . roads, including the construction, operation, and

---

[3] The Department also challenges the inclusion of similar reasoning in *Avoyelles II*. Because we conclude, *infra*, that the district court erred in granting summary judgment as to the route in *Avoyelles II*, a specific ruling about restrictions pursuant to that route would be premature. Suffice it to say, though, that the same basic legal principles would apply.

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

maintenance thereof, whenever he determines that such uses are compatible with the purposes for which these areas are established.

16 U.S.C. § 668dd(d)(1).  Pursuant to the Secretary's regulations, "[a] permit shall be required for any person entering a national wildlife refuge, unless otherwise provided" by Refuge System regulations.  50 C.F.R. § 26.22(b).  "The permittee [must] abide by all the terms and conditions set forth in the permit." *Id.*  The issuance of such a permit is an agency action reviewable under the Administrative Procedure Act ("APA").  *See* 5 U.S.C. §§ 701-706.  Pursuant to an APA challenge, we will set an agency action aside if we conclude that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Pub. Citizen, Inc. v. EPA*, 343 F.3d 449, 455 (5th Cir. 2003).  The School Board did not challenge the permit or its restrictions under the APA.  Instead, the School Board relies on the QTA and article 689 of the Louisiana Civil Code.

Article 689 provides that "[t]he owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road.  He is bound to indemnify his neighbor for the damage he may occasion."  As we have explained:

> [Article 689] is not self-executing. It does however confer on the owner of an enclosed estate a legal servitude on the subordinate property which entitles the owner to a forced passage for indemnity. The enclosed landowner has the right to go into court and demand that the passage be fixed . . . .

*New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 334 (5th Cir. 2008) (quoting *Batton v. United States*, No. 05-1219, 2006 WL 568295, at *3 (W.D. La. Mar. 8, 2006)).  "[T]o obtain the actual, fixed physical manifestation of this right of passage, the enclosed landowner must either go to court and demand that the passage be fixed or obtain an agreement from the owner of the subservient

11

estate." *Id.* Once the right of passage is fixed, it becomes a conventional servitude. *Id.* (quoting *Batton*, 2006 WL 568295, at *3 ). The purpose of the School Board's lawsuits, therefore, was both to vindicate its preexisting rights and to transform the nature of those rights, from a legal servitude into a fixed conventional servitude.

The QTA "provides the exclusive basis for jurisdiction of actions challenging whether the United States holds title to real property." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). Prior to the law's enactment, "States and all others asserting title to land claimed by the United States had only limited means of obtaining a resolution of a title dispute." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 280 (1983). Recognizing the problems that arose from such a limitation, Congress enacted the QTA for the purpose of expressly waiving sovereign immunity to suits seeking to adjudicate disputed titles in real property. *Id.*; *see* 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."). The legislative history of the QTA "indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action." *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978) (per curiam); *see* H.R. REP. NO. 92-1559, at 8 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4552 ("The quieting of title where the plaintiff claims an estate less than a fee simple—an easement or the title to minerals—is likewise included in the terms of the proposed statute.").

"When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *Mottaz*, 476 U.S. at 841 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The waiver of sovereign immunity under the QTA reaches civil actions "to adjudicate a disputed title to real property." 28 U.S.C. § 2409a(a). Nothing in the text of

the QTA suggests that it authorizes a suit to collaterally challenge a permit issued by a federal agency. Therefore, the only question before us is whether the School Board's property rights under article 689 include the right to act without regard to the terms of an FWS permit. The district court concluded that, because the Refuge Act does not expressly pre-empt state enclosed estate law, the School Board's right of passage exempts it from the permitting requirement. We disagree.

It is well-settled that federal law may pre-empt state law even in the absence of an express pre-emption clause. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000) (rejecting the need for a "specific expression of agency intent to pre-empt"). Implied pre-emption occurs *inter alia* where state law "actually conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). While the Refuge Act discusses the Department's authority to grant easements, the Act does not specifically address the scope of its authority to restrict the use of an easement to which an adjoining landowner is entitled as a matter of law. *See* 16 U.S.C. § 668dd(d)(1)(A)-(B); *see also Burlison v. United States*, 533 F.3d 419, 434-35 (6th Cir. 2008) (discussing treatment of easements by § 668dd(d)(1)(A)-(B)).[4] The language of the Act, however, makes clear that the Department is permitted to regulate entry into the physical boundaries of Refuge lands:

> No person shall disturb, injure, cut, burn, remove, destroy, or possess any real or personal property of the United States, including natural growth, *in any area of the System*; . . . or enter, use, or

---

[4] As the Sixth Circuit has pointed out, the ambiguous grammar of § 668dd(d)(1)(B) could lend itself to the interpretation that it expressly authorizes the Department to "permit the use of . . . easements in over, across, upon, through, or under any areas within the System." *Burlison*, 533 F.3d at 434. That somewhat awkward phrase could be read as referring to the Department's authority to regulate existing easements. We agree with the Sixth Circuit, though, that the better reading of the language is that § 668dd(d)(1)(B) refers to the authority to "grant easements" and "permit the use of . . . areas within the System." *Id.* at 435.

otherwise occupy *any such area* for any purpose; unless such activities are performed by persons authorized to manage such area, or unless such activities are permitted either under subsection (d) of this section or by express provision of the law, proclamation, Executive order, or public land order establishing the area, or amendment thereof . . . .

16 U.S.C. § 668dd(c) (emphasis added). The relevant FWS regulation likewise requires a permit for "*any person entering* a national wildlife refuge," unless otherwise excepted by the Department's regulations. 50 C.F.R. § 26.22(b) (emphasis added). The School Board's servitude is a property right, but it is one of *use*; the School Board does not own fee simple in the swath of land constituting its pathway through the refuge. *See* LA. CIV. CODE. ANN. art. 646 ("A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates belong to different owners."); *see also Blanda v. Rivers*, 210 So. 2d 161, 166 (La. Ct. App. 1968) (distinguishing between types of real property interest under Louisiana law); *Welsh S. Oil Co. v. Scurlock Oil Co.*, 201 So. 2d 376, 378 (La. Ct. App. 1967) (distinguishing between "the land described" and "a servitude across it"). Use of the School Board's right of passage, therefore, unambiguously involves entering an "area of the System," in the words of the statute, and "entering a national wildlife refuge," in the words of the regulations. The School Board's use of the passage is therefore subject to regulation by the Department.

Moreover, the School Board concedes that imposing restrictions on entry and use, even by easement holders, is well within Congress's powers under the Property Clause of the Constitution. U.S. CONST., art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ."); *accord Burlison*, 533 F.3d at 432-33 (permitting regulation of use of an easement under the Property Clause); *Hale v. Norton*, 476 F.3d 694, 699-

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

700 (9th Cir.) (same), *cert. denied sub nom. Hale v. Kempthorne*, 552 U.S. 1076 (2007); *United States v. Jenks*, 22 F.3d 1513, 1517 (10th Cir. 1994) (same). The Property clause grants the United States "power over its own property analogous to the police power of the several states." *Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976) (quoting *Camfield v. United States*, 167 U.S. 518, 525 (1897)). Requiring a permit for entry and use is an exercise of that police power.

The law of property is one of those "areas of law traditionally reserved to the states," where a strong presumption against pre-emption applies. *Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc) (internal citation and quotation marks omitted). Even that presumption, however, cannot overcome a direct conflict with federal law. Insofar as Louisiana law would permit the School Board to enter, use, or otherwise occupy Refuge lands in violation of FWS regulations, Louisiana law is in direct conflict with federal law and is pre-empted.[5] The district court's judgment, which was premised on the assumption that Louisiana law alone defined the scope of the School Board's rights, was therefore in error.

IV

Separately, Elder appeals the district court's ruling in *Avoyelles II* with regard to the route of the School Board's conventional servitude. It argues first that Louisiana law only permits a servitude to the nearest public road, in this instance, Bayou Natchitoches Road ("Bayou Road"), which can be reached by passage across lands owned by the Arnouvilles. The School Board and other

---

[5] We note that, in the Sixth Circuit's similar analysis in *Burlison*, the court suggests that its calculus might differ if the Department were to "eviscerate [the adjoining landowner's] property rights in an easement," rather than merely subject use of the easement to reasonable regulation. 533 F.3d at 440. A complete evisceration of an adjoining landowner's rights might *inter alia* raise questions about the constitutionality of the Department's actions under the Takings Clause, U.S. CONST. amend. V. While the School Board's brief passingly mentions the Takings Clause in the context of discussing the hypothetical revocation of its permit, the brief does not argue that the use restrictions alone amount to an unconstitutional uncompensated taking.

landowner-appellees counter that Louisiana law permits courts to consider feasibility in affixing a right of passage, and if passage to the nearest road is not feasible, the court may consider routes to other roads. Elder argues, in the alternative, that the School Board failed to show that passage to Bayou Road via the Arnouville lands was unfeasible. The School Board argues that there are no genuine issues of material fact with regard to the feasibility of the various alternative routes, that it showed that the Bayou Road route was unfeasible, and that summary judgment was therefore appropriate.

Article 689 grants the owner of an enclosed estate "right of passage over neighboring property to *the nearest public road*." (Emphasis added.) It is undisputed that Bayou Road is physically the nearest public road, but the district court granted passage to farther-away Lac Long Road. Elder argues that that ruling violated the command, under the Louisiana Civil Code, that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE ANN. art. 9. The School Board counters that article 689 must be read alongside article 692, which provides that "[t]he passage *generally* shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands." LA. CIV. CODE ANN. art. 692 (emphasis added). "The term 'generally' in La. Civ. Code art. 692 is an acknowledgment that there are exceptions to the general rule, and it recognizes that the nature and location of the right of passage are governed by the circumstances of each case." *May v. Miller*, 941 So. 2d 661, 666 (La. Ct. App. 2006) (quoting *Pearson v. Theriot*, 534 So. 2d 35, 36 (La. Ct. App. 1988)). The School Board suggests that Louisiana cases demonstrate a willingness to consider feasibility, cost, and convenience in affixing an article 689 right of passage. *E.g.*, *Davis v. Culpepper*, 794 So. 2d 68, 74 (La. Ct. App.) (recognizing exceptions to the shortest route

rule), *cert. denied*, 804 So. 2d 646 (2001); *see also Cash Point Plantation Equestrian Ctr., Inc. v. Shelton*, 920 So. 2d 974, 977 (La. Ct. App. 2006) (same). Specifically, for example, *Davis* and *Cash Point* suggest that a court may depart from the usual rule of relying on the shortest route in certain "exceptional circumstances," such as "when the estate which provides the shortest route is covered by water or is otherwise not accessible year-round" or "when the costs associated with crossing the estate which is the shortest distance from the public road are so exceptional that from a practical standpoint it is economically unfeasible to build." *Davis*, 794 So. 2d at 74. Elder concedes that article 692 does provide flexibility with regard to the details of the route, but argues that that flexibility does not extend to the question of which public road the route will reach.

Based on our review of the statutes and cases, we agree with the School Board that a court may consider feasibility in fixing a route, and that, in select cases, feasibility concerns may warrant fixing a route to a road that is not physically the nearest to the enclosed estate. *See, e.g.*, *May*, 941 So. 2d at 667, 670 (affirming trial court decision to fix passage on route to road (Big Lake) other than the nearest public road (Lisle Peters)); *Cash Point*, 920 So. 2d at 976, 978-79 (affirming trial court decision to fix passage on route to road (Bodcau Station) other than the nearest public road (Espanita)). The owner of the enclosed estate is entitled to a right of passage that is "suitable for the kind of traffic that is reasonably necessary for the use of that estate." LA. CIV. CODE ANN. art. 690. In some situations, it will be physically impossible, legally impossible, or simply wholly impracticable to fix an adequate route with a direct outlet to the nearest public road. Assuring that a landowner in such a situation can nevertheless make productive use of its land is essential to the purposes of the enclosed estate provisions: benefitting the "landowner by permitting full utility of his land" and benefitting "the public by keeping valuable property in

17

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

commerce." *Vermilion Parish Sch. Bd. v. Broussard*, 270 So. 2d 523, 525 (La. 1972). We agree, however, with the Louisiana courts that have held that exceptional circumstances are required before a court may depart substantially from the ordinary practice of fixing the shortest route to the nearest public road. *See Cash Point*, 920 So. 2d at 977; *Davis*, 794 So. 2d at 74.[6]

Elder argues that, even if a route may sometimes lead to a public road other than the closest, the "Pug's Road" route to Bayou Road is feasible, and the district court therefore erred by granting summary judgment in favor of the longer route. The district court concluded that the Pug's Road route was "less preferable" than the route over the Refuge and Elder properties for three reasons: (1) the Arnouville lands over which the Pug's Road route would cross are cultivated farm land, and therefore a new road would have to be built over those lands; (2) the Pug's Road route would only provide access to the eastern portion of the School Board's lands, and the School Board would need to build a bridge on its property to access the western portion; and (3) the route to Lac Long Road had been relied on historically to provide access to the School Board lands. The district court concluded that, while both routes would require physical improvements, "[c]ommon sense informs this court that refurbishment of existing roads is less costly and injurious than construction of wholly new roads." The court recognized that fixing the conventional servitude across Elder and the Refuge lands would be "an exception to the general rules pertaining to location of servitudes of passage," but that such an exception was justified because that route was "the most just and practicable solution." Although the

---

[6] Admittedly, courts have sometimes fixed longer routes without an express finding of an exceptional circumstance. *See, e.g.*, *Perdue v. Cruse*, 38 So. 3d 1235, 1239 (La. Ct. App. 2010) (affirming route along original access path because that path would be less injurious than the shortest path). In this case, however, the School Board's proposed departure from the shorter route involves more than a mere difference in length—it involves selecting an outlet to a different public road and placing a burden on property that would not be burdened at all by the shorter route.

district court conceded that some facts were disputed, it concluded that the disputed facts were not material and granted summary judgment in favor of the Elder/Refuge route.

Based on our review of the record and case law, we cannot agree that the School Board demonstrated that, as a matter of law, the route over the Refuge and Elder's land was the only feasible route. The enclosed landowner seeking a route other than the shortest bears the burden of showing that an exceptional circumstance justifies the alternative route. *Davis*, 794 So. 2d at 74. The School Board argues that it has carried its burden by demonstrating the expenses necessary to render the Pug's Road route adequate. A route is not unfeasible, however, simply because it requires expensive improvements. *See May*, 941 So. 2d at 668-69 (affirming district court's setting of route that "required the building of an expensive bridge"). Moreover, Elder presented an engineer's report suggesting that *both* proposed routes would require expensive improvements and estimating that the overall improvements necessary for use of the Elder/Refuge route would actually be more expensive. Although a district court considering motions for summary judgment in a non-jury case has "somewhat greater discretion to consider what weight it will accord the evidence," it is not free to disregard "significant evidence demonstrating the existence of a genuine fact issue." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 675 (5th Cir. 2010) (quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984) (emphasis omitted)).

Even assuming, though, that the district court was correct that the Elder/Refuge route was less expensive, Louisiana law does not guarantee an enclosed landowner the least expensive route. To the contrary, an exceptional circumstance arises only "when the costs associated with crossing the estate which is the shortest distance from the public road are so exceptional that from

No. 09-30660 consolidated w/ Nos. 09-30897 & 09-31102

a practical standpoint it is economically unfeasible to build."[7]  *Davis*, 794 So. 2d at 74.  The School Board has not shown that the expense of using the Pug's Road route was actually prohibitive, as opposed to merely greater than the School Board would prefer.  Whether a cost is prohibitive depends on context, in particular regarding the value of productive use of the land over time.  *See May*, 941 So. 2d at 668-69 (evaluating whether cost of bridge was prohibitive in light of the value of the enclosed land).  We cannot conclude, as the district court did, that the disputed or unresolved facts in this case are merely incidental, especially where the School Board bore the burden of proof.  Accordingly, the grant of summary judgment to the School Board was in error.

V

For the foregoing reasons, the district court's judgments in *Avoyelles I* and *Avoyelles II* are REVERSED and the cases REMANDED for proceedings in accordance with this opinion.

---

[7] Where, as here, the shortest route is unavailable, the district court is still obliged to favor the shortest *possible* route.  *See Cash Point*, 920 So. 2d at 979 (applying "exceptional circumstances" requirement in favor of shortest possible route to public road, in case where route to nearer public road was blocked by federally-designated wetlands).