Judgment rendered April 8, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,387-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ENTRADA COMPANY, L.L.C.                    Plaintiff-Appellee

versus

TONY CASSELS, CONNIE L.                    Defendants-Appellants
CASSELS, MARC SHANNON
CONERLY AND RICKIE
CONERLY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20161635

Honorable Daniel Joseph Ellender, Judge

* * * * *

HALLACK LAW FIRM, APLC          Counsel for Appellants,
By: William H. Hallack, Jr.       Tony Cassels, Connie L.
    Dennis W. Hallack             Cassels, Jimmy O.
                                  Holsomback, Jr., Trustee,
                                  Carl B. Shockley, Sherry
                                  J. Shockley, Louis Joe
                                  Giovingo, Nell M.
                                  Giovingo, Ronald
                                  William Rogers, Steven
                                  Earl Hatten, Rebecca
                                  Lynn Prysock Rogers,
                                  Cynthia Browder Hatten,
                                  Donald Wesley Sebren,
                                  Stacey Bice Sebren,
                                  Monika May, Billy T.
                                  Coats Boone Trust, and
                                  Reagan Alan Boone

DOUGLAS L. STOKES, JR.

Counsel for Appellee,
Entrada Company,
L.L.C.

MIXON, CARROLL & FRAZIER, APLC
By: James Eugene Mixon
     James Linus Carroll
     Brian E. Frazier

Counsel for Appellees,
Scott Andrew
Soignier and Taryn
Phythian Soignier

KRISTEN BROWN PLEASANT

Counsel for Appellees,
Gail Rae Reed and
Daniel Evan Kirsch

* * * * *

Before MOORE, McCALLUM, and THOMPSON, JJ

**McCALLUM, J.**

Owners of tracts of immovable property located in Ouachita Parish appeal a judgment decreeing that a neighboring landowner, Entrada Company, LLC, has the right to use a public road as described in a 1974 act entitled "Servitude of Way for Public Road" to reach the southwest corner of its 15-acre tract.

We reverse the judgment, grant the alternative relief sought by Entrada, and remand.

## FACTS

The property at issue is located in Eros, Louisiana, or more specifically, in Section 13, Township 17 North, Range 1 East, Ouachita Parish. On December 5, 1974, this property became burdened by a recorded "Servitude of Way for Public Road." This Act declared that the grantors dedicated to the public, for the establishment and maintenance of a public highway, a servitude and right of way over a 60-foot wide strip which began at Leckie Road, ran north for 1100 feet, then continued in a northeasterly direction for 84 feet, then ran north for 568 feet, before turning east and running for 1590 feet, more or less, until it reached the west line of Jerry Donahoe's property. Although all of the individuals named in the Act granted the servitude, the Act reflected that $1,000 was paid by four grantors to the others as consideration for the servitude. The Act further declared and acknowledged that the Ouachita Parish Police Jury ("Police Jury") "may establish and maintain a public highway" on the 60-foot wide strip without further authorization of the grantors. Although the Police Jury never established or maintained a public highway on the servitude, a road that

followed the contours of the servitude would eventually become known as Squirrel Ridge Road.

Entrada first acquired an undivided interest in a 15-acre tract in the Northeast ¼ of Section 13 in 2010. Entrada acquired full ownership of that tract in 2016. Jerry Donahoe, one of the grantors of the servitude, is an ancestor-in-title of this 15-acre tract. Donahoe acquired his interest by cash deed on April 10, 1974. Donahoe and his wife sold the north half of their interest on October 10, 1975. Squirrel Ridge Road measures approximately 3321 feet in length from where it begins at Leckie Road to where it reaches the corner of Entrada's 15-acre tract.

Entrada's 15-acre tract is bordered on the west by property owned by Tony Cassels and Connie Cassels. Mr. and Mrs. Cassels acquired their property ("Cassels tract") in 1998. The servitude more or less bisects part of the Cassels tract. In 1999, Mr. and Mrs. Cassels sold approximately six acres of their property to Marc Conerly and Rickie Conerly. The servitude runs along the southern border of the Conerly property ("Conerly tract"), which is to the north and to the west of the Cassels tract. Glenn Calk, one of the grantors of the servitude, is an ancestor-in-title of the property owned by the Casselses and the Conerlys. Calk acquired his interest by cash deed on April 10, 1974. His interest was transferred by judgment of possession in his succession on September 12, 1979.

Ronald Rogers and Rebecca Rogers own a tract of land ("Rogers tract") that is to the west of the Conerly tract. The servitude runs along the southern border of the Rogers tract after the servitude makes a 90-degree turn to the east.

2

Entrada's 15-acre tract is bordered to the south by property ("Hatten tract") owned by Steven Hatten and Cynthia Hatten.  The servitude runs along the western border of the Hatten tract from Leckie Road.   Entrada's 15-acre tract is bordered to the north by a 40-acre tract which is also owned by Entrada.

***Procedural history***

On May 24, 2016, Entrada filed a petition for a right of passage from its 15-acre tract over the Cassels tract and the Conerly tract.  A default judgment was entered and confirmed.  By judgment rendered on July 25, 2016, the trial court ruled that the Entrada estate was enclosed, had no access to a public road, and was entitled to a servitude of passage across the Cassels and Conerly tracts that was to be 60 feet in width.

On October 10, 2016, Mr. and Mrs. Cassels filed the exception of nonjoinder, which the trial court sustained.  Entrada was ordered to amend its petition to name as defendants the owners of the tracts of immovable property under Squirrel Ridge Road from its origin at Leckie Road to where it ended.

Entrada filed an amended petition on December 29, 2016, naming the additional defendants.  For the first time, Entrada sought a declaratory judgment that it was entitled to use Squirrel Ridge Road to travel from its property to Leckie Road.  In the alternative, Entrada sought a right of passage over the defendants' property to Leckie Road, with the right of passage covering property identical to that described in the 1974 Act.

On January 4, 2017, a joint motion to amend the July 25, 2016, judgment was filed so that the judgment would affect only the Conerly tract. The amended judgment provided that Entrada's tract was enclosed as

3

defined by law, had no access to a public road, and was entitled to a servitude of passage across the Conerly tract.

Entrada filed a second amended petition on April 10, 2017, after exceptions of vagueness and no cause of action were sustained. Entrada sought a declaratory judgment that the burdened property in the servitude was a public road and that Entrada was entitled to use it to reach Leckie Road from its 15-acre tract. Entrada alleged in the alternative that it was entitled to a right of passage over the Cassels tract to Squirrel Ridge Road because its 15-acre tract was an enclosed estate, Squirrel Ridge Road was the nearest public road, and the shortest and most convenient route from the Entrada tract to Squirrel Ridge Road was over the Cassels tract.

***Trial on the merits***

Trial in this matter was held on September 6, 2018. Ronald Rogers and Rebecca Rogers testified that they began building a home in 1998 on their property, which has Squirrel Ridge Road as part of its southern boundary for approximately 660 feet. The Rogers family moved into their home the following year, and listed their address as being on Squirrel Ridge Road.

Mrs. Rogers testified that it was just woods beyond their property when they moved there, and the only other person around was a Carmela Ethington, who apparently lived west of the servitude and had sold ten acres to Mr. and Mrs. Rogers. Mrs. Rogers described what she called a "trail" or "path" that came north from Leckie Road and was utilized by Ms. Ethington. It was a cleared area, but she would not have called it an actual road. She referred to it as just two tire tracks. The path ended near the corner of where the Rogers tract started, so they continued it to the back of their property.

4

Mrs. Rogers testified that no other people were driving past their home when they first moved there.

Mr. Rogers did not think what became known as Squirrel Ridge Road was a road when they first moved there, but thought it was more akin to a "deer trail." Mr. Rogers remarked that woods and maybe a pig trail or a deer trail were to the east of their property. Mr. Rogers testified that he and his neighbors occasionally placed sand, gravel, or concrete in holes in the road until eventually they decided to use crushed asphalt as a road surface.

Mr. Rogers recalled that Squirrel Ridge Road basically ended at his property. He extended it somewhat farther east because he had a shop that was almost on the corner of his property line. However, he did not extend it beyond that point.

Tony Cassels and Connie Cassels purchased their property in 1998 and moved into their home in July of 2000. Their address is on Squirrel Ridge Road. Mrs. Cassels remembered there were four homes on Squirrel Ridge Road at the time. Mr. Cassels recalled that their tract was completely undeveloped when they acquired it. According to Mrs. Cassels, they could not get back there because it was densely wooded, so they had to stop at a nearby fenced area.

Mrs. Cassels testified that while the north-south portion of Squirrel Ridge Road existed when they acquired their property, it was a dirt road that she likened to a "turn row" in a cotton field. She also testified that only a short length of Squirrel Ridge Road ran east-west at the time. According to Mrs. Cassels, that length of road was in poor shape. Mrs. Cassels recalled that there was a mobile home in a fenced area where the road made its 90-degree turn and that was as far as the road went. Mrs. Cassels testified that

5

they had to create a stretch of Squirrel Ridge Road to the location where they eventually built a north-south driveway from the road to their home.

Tony Cassels testified that anyone who traveled east past the point where Squirrel Ridge Road ended at his driveway would have encountered woods. In order to access a hunting spot to the east, he cut a four-wheeler trail along the servitude, but that trail did not reach Entrada's 15-acre tract. Mr. Cassels also stated that a person had to cross two creeks in order to reach the 15-acre tract from where Squirrel Ridge Road ended at his driveway, and he stopped his trail at the second creek.

Ronald Rogers testified that after increased development commenced in the area, the landowners met and decided to approach the Police Jury about maintaining Squirrel Ridge Road. However, the landowners balked at the $150,000 it would cost to improve the road to meet parish specifications. Tony Cassels testified that the landowners twice tried to convince the Police Jury to maintain the road, but the Police Jury refused to do so unless the landowners paid for the upgrade.

The Hattens, who own the tract south of Entrada's 15-acre tract, do not use Squirrel Ridge Road to access their property. Instead, they use Leckie Road, which serves as their address.

James Steele is one of two managing members of Entrada. He testified that the recorded servitude was discovered after the original petition was filed in this matter. Steele testified that he was never told not to use Squirrel Ridge Road to reach Entrada's 15-acre tract. Steele described Squirrel Ridge Road as no longer being maintained once it passed the driveway on the Cassels tract. Steele estimated there was a distance of 660 feet between Entrada's property and where the road was no longer

maintained. He thought that part of the road, which had a couple of cement culverts, looked like an old existing road.

Some of the defendants who testified gave various reasons for not wanting Entrada to use Squirrel Ridge Road. Tony Cassels desired for his property to remain undisturbed. He thought it would change the character of his property since it was at the end of the road. Connie Cassels was worried about additional traffic and crime, as well as the cost of road upkeep. She enjoyed the privacy of their location. Ronald Rogers also cited privacy as a concern. Rebecca Rogers worried about more wear and tear on the road.

Steele testified that Entrada intended to do nothing with the property at the moment, but it just wanted to be able to access its property. Steele planned on having the timber on Entrada's property thinned in the future, which would require access of a suitable width for any trucks engaged in that process.

After the case was submitted for decision, the defendants filed the exception of prescription. They argued that the evidence presented at trial did not show use of the servitude by anyone between the date that the Act was executed and the 1990s, thereby barring Entrada's claims to the extent they arose from the servitude. Steele testified at the prescription hearing. Satellite images of the area and ground-level photographs taken of the Cassels tract near Entrada's 15-acre tract were introduced at the hearing. The exception was denied.

In a judgment rendered on May 21, 2019, the trial court ruled that Entrada had the right to use the public road described in the 1974 "Servitude of Way for Public Road" and sometimes known as Squirrel Ridge Road. Most of the defendants, including Mr. and Mrs. Cassels, have appealed.

## DISCUSSION

### *Prescription of nonuse*

The appellants argue the trial court erred in not finding that the servitude was extinguished by the accrual of nonuse prescription. They assert that prescription could not be renounced or waived, and that the servitude was not revived by an implied dedication.

A predial servitude is extinguished by nonuse for ten years. La. C.C. art. 753. Prescription of nonuse begins to run for affirmative servitudes from the date of their last use. La. C.C. art. 754.

When the prescription of nonuse is pleaded, the owner of the dominant estate has the burden of proving that he or some other person has made use of the servitude as appertaining to his estate during the period of time required for the accrual of the prescription. La. C.C. art. 764.

Steele contended that he could see visible evidence of a road to the west boundary of Entrada's 15-acre tract, and that he could walk down this road onto the Entrada tract. Steele took a photo of a broken concrete culvert across a creek at a location along the servitude that was approximately 200 feet east of the driveway on the Cassels tract. What appears to be a path can be seen well into the distance while looking east from that culvert. Steele did not know the age of the culvert. The earliest satellite images introduced into evidence at the hearing were taken in February of 1998. These images show a significant clearing which follows the contours of the servitude from Leckie Road to a short distance east of where the servitude makes a 90-degree turn.

Steele observed that eight homes and four barns or shops have access from Squirrel Ridge Road. Tony Cassels testified that there are some homes

and barns that can only be reached from Squirrel Ridge Road. The road is also used for deliveries to the property owners. While Mr. and Mrs. Cassels use a post office box, some of their neighbors have mailboxes on Squirrel Ridge Road, and Mr. Cassels has seen mail being delivered to them. Mrs. Cassels explained that they have a post office box because the person delivering their mail had refused to drive that far along the road because of the condition of the road.

Rebecca Rogers testified that while they did not own the cleared area from Leckie Road, they had access to it when they first moved there. Eventually, others started building along the sides of the cleared area that the Rogers family had used as a road. Mr. and Mrs. Cassels used this road to view the property before they purchased it.

Steele asserted that he never saw a sign prohibiting anyone from using the road or alerting anyone that it was a private road. According to Mrs. Cassels, the homeowners had purchased two street signs from the Police Jury that said Squirrel Ridge Road, a name that was chosen by the property owners. Those signs were installed where the road begins at Leckie Road, but were not replaced after the signs were stolen. Squirrel Ridge Road was never maintained by the Police Jury, and it was not on the road inventory list for Ouachita Parish.

Squirrel Ridge Road was also used by visitors to homes along the road as well as by a school bus for children who lived there. Complete strangers also traveled along the road. Mr. Cassels testified that he would stop strangers that he found on the road because they had no business being there. He occasionally found strangers on the road as far as his driveway.

9

Mr. Cassels testified that nobody used Squirrel Ridge Road to access the 15-acre tract between 2000 and 2010. He knew Pam Simpson, the owner of the 15-acre tract at the time, because they worked at the same school, and he never saw her going back and forth to the tract. He recalled that Simpson gave him permission to hunt on the tract.

Despite the presence of the culverts, Mr. Cassels disagreed there was any evidence of an old road within the 60-foot wide strip from the location of his driveway to the western boundary of Entrada's tract. Mr. Cassels conceded there were other four-wheeler trails around there in addition to the one that he had cut, and that some type of vehicle had used the portion of the servitude that ran from his driveway to the western border.

We note that when Mr. Cassels was in the process of buying his land, he asked his attorney if his family would have access to the land, and his attorney confirmed that they would after looking into it. Mr. Cassels explained that he inquired about access because the area was heavily wooded and there was no real road. Mrs. Cassels testified that she did not know about the servitude when they purchased the property, but they assumed based on what their attorney told them that there was access to the property by using Squirrel Ridge Road. Mrs. Rogers denied awareness of the 1974 servitude when they moved there, and her husband stated that he was not familiar with it.

When evidence is introduced at the hearing on the peremptory exception of prescription, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Cooksey v. Heard, McElroy & Vestal, L.L.P.*, 44,761 (La App. 2 Cir. 9/23/09), 21 So. 3d 1011.

To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993).

Steele admitted at the prescription hearing that he had no evidence other than the photographs to show use of the servitude between 1974 and 1984. Entrada's attorney also conceded at the hearing that there was no evidence of use between those years. Furthermore, when asked if there was approximately 24 years of nonuse, Entrada's attorney replied, "Yes. I would say that's probably right."

We are mindful that appeals are taken from the judgment, not the reasons for judgment. *See Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So. 3d 507. Nevertheless, in this instance, the trial court's reasons for judgment are instructive in reviewing this judgment.

The trial court believed that public use of the servitude for the past 20 years had waived the claim of prescription as it related to the years prior to 1984. That belief was in error. A predial servitude extinguished by nonuse for ten years cannot be revived except by following the formalities of creating it anew. *See* footnote 3 in *Church v. Bell*, 00-0286 (La. App. 1 Cir. 3/28/01), 790 So. 2d 82, *writ denied*, 01-1214 (La. 6/15/01), 793 So. 2d 1247. There was no formal renewal of the 1974 servitude, and there is no evidence in the record of use of the servitude before 1984. Thus, the trial court was manifestly erroneous in concluding that the 1974 servitude was not extinguished because of ten years of nonuse.

11

The trial court also concluded that implied dedication was applicable to the facts of the case. Entrada argues that even if it is assumed that the 1974 servitude prescribed by nonuse, it was revived by implied dedication of Squirrel Ridge Road to public use from at least its beginning at Leckie Road to as far as the location of the driveway built by Mr. and Mrs. Cassels. The appellants counter that any intent to dedicate Squirrel Ridge Road to public use was not unequivocal, but was clearly conditioned on the Police Jury's acceptance and maintenance of the road.

Implied dedication is one of the four modes of dedication of property to public use recognized by Louisiana courts. *Cenac v. Public Access Water Rights Ass'n*, 02-2660 (La. 6/27/03), 851 So. 2d 1006. Implied dedication does not disturb the ownership of the roadbed of a dedicated road, but grants a servitude of passage to the public. *U.S. Silica Co. v. Wooldridge*, 34,763 (La. App. 2 Cir. 10/31/01), 799 So. 2d 693. Louisiana courts have demanded two indispensable elements for an implied dedication because implied dedication lacks the formalities and safeguards of the other modes of dedication. *Cenac*, *supra*. An unequivocally manifested intent to dedicate on the part of the owner and an equally clear intent to accept on the part of the public are required. *Id.* At least one of these indispensable elements is absent from this record.

With the 1974 servitude removed from consideration, it cannot be stated that the actions of the defendants unequivocally manifested an intent to dedicate Squirrel Ridge Road to public use. The property owners apparently approached the Police Jury twice about taking over maintenance of Squirrel Ridge Road, but those efforts proved to be fruitless because of the considerable cost to be borne by the property owners in getting Squirrel

12

Ridge Road to a suitable condition. We cannot discern any benefit to the property owners that would have been achieved by impliedly dedicating Squirrel Ridge Road to public use.

Accordingly, we conclude that the trial court was manifestly erroneous in finding that Entrada had the right to use Squirrel Ridge Road as a public road. However, our inquiry does not end there as Entrada, in the alternative, sought a right of passage over the defendants' property to Leckie Road along the property described in the 1974 servitude.

### Right of passage

The right of passage for an enclosed estate is set forth in La. C.C. art. 689, which states:

> The owner of an estate that has no access to a public road or utility may claim a right of passage over neighboring property to the nearest public road or utility. He is bound to compensate his neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion.

The appellants contend that for purposes of this analysis, Entrada's contiguous 15-acre and 40-acre tracts must be considered as one tract. We agree with this contention. *See Roberson v. Reese*, 376 So. 2d 1287 (La. App. 2 Cir. 1979). However, neither tract has access to a public road. Thus, the 15-acre tract is enclosed and entitled to a right of passage.

The owner of an enclosed estate does not have discretion to choose which estate should be burdened with a legal right of passage. *Davis v. Culpepper*, 34,736 (La. App. 2 Cir. 7/11/01), 794 So. 2d 68, *writ denied*, 01-2573 (La. 12/14/01), 804 So. 2d 646. The right of passage "generally shall be taken along the shortest route from the enclosed estate to the public road or utility at the location least injurious to the intervening lands." La. C.C. art. 692.

13

Leckie Road is the nearest public road to the 15-acre tract. Don Antley, a professional land surveyor, testified that Leckie Road is 2263 feet from the 15-acre tract. W.B. Nelson Road is the public road nearest to the 40-acre tract, with a distance measuring 1619 feet from the 40-acre tract. W.B. Nelson Road is 2940 feet from the 15-acre tract. While Leckie Road is closer to the 15-acre tract, the two tracts are considered as one tract for purposes of this analysis. Thus, W.B. Nelson Road becomes the public road closest to Entrada's property.

Myron Toft, a real estate title examiner, testified that situated directly north of Entrada's 40-acre tract is a tract owned by the Cayden Lane Homeowners' Association. Toft believed that Steele was president of that association. There is a road named Cayden Lane which originated at W.B. Nelson Road and reaches two tracts to the north of Entrada's 40-acre tract. However, Cayden Lane is a private road.

As recognized by the legislature by its use of the word "generally" in La. C.C. art. 692, there are situations that allow a servitude of passage to be imposed on an estate that does not provide the shortest route. *Davis v. Culpepper*, *supra*.

The first exception recognized by the jurisprudence is when the estate which provides the shortest route is covered by water or is otherwise not accessible year-round. The second derogation from the general rule is when the costs associated with crossing the estate which is the shortest distance from the public road are so exceptional that from a practical standpoint it is economically unfeasible to build. The party arguing that the servitude should instead be imposed on another estate bears the burden of establishing that one of the two exceptions is applicable. *Phillips Energy Partners, LLC*

14

*v. Milton Crow Ltd. P'ship*, 49,791 (La. App. 2 Cir. 5/20/15), 166 So. 3d 428, *writ denied*, 15-1396 (La. 10/2/15), 186 So. 3d 1148.  Entrada concedes that no evidence regarding the second exception was presented at trial.

Steele testified that Entrada decided not to seek a route to the north because the area is very low and is home to a swamp and Wilder's Creek.  Steele explained that the creek will get out of its banks and go across the swamp.  Steele also explained that while the 40-acre tract was not underwater at the time of trial, flooding from the creek will cover quite a bit of land.  Tony Cassels described Wilder's Creek as maybe 15 feet wide.  He agreed that the creek floods in places, but did not believe that it would be a condition that prevented someone from going across it.

Steele testified that since 2010, he has reached the 15-acre tract either by Squirrel Ridge Road or on a four-wheeler trail from his property farther east if the trail is not underwater or in a swamp-like state.  He would also use that trail to reach the 40-acre tract.  This shows the effect that flooding can have on access to the tracts.

Based upon our *de novo* review of this record, we conclude that the first exception to taking the shortest route is applicable as the northern route is not accessible year-round.  Thus, the right of passage will be to Leckie Road.  The least injurious route to Leckie Road is along the path of the servitude described in the 1974 Act.  Accordingly, we remand this matter to the trial court to determine the cost to Entrada for its right of passage.

### CONCLUSION

We reverse the judgment finding that Entrada had the right to use the public road as described in the "Servitude of Way for Public Record" that was executed in 1974 and recorded in the conveyance records of Ouachita

15

Parish.  However, we find that Entrada is entitled to its alternative demand for a right of passage along the path of the 1974 servitude.  We remand this matter to the trial court for a determination of the cost to Entrada for this right of passage.  Each party is to bear its own costs of this appeal.